**Viceroy BRISON, Jr., et al., Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 21, 1975.

Anthony M. Wilhoit, Public Defender, Kathleen McCabe, Jim R. Early, Joe Jarrell, Asst. Public Defenders, Frankfort, for appellants.

Ed W. Hancock, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Frankfort, for appellee.

CATINNA, Commissioner.

Viceroy Brison, Jr.; Arthur Ray Brison, his brother; John Ballard; and Ben W. Thacker were jointly indicted for dwelling-house breaking. The jury found Viceroy Brison, Jr., guilty and fixed his punishment at five years' imprisonment; Arthur Ray Brison guilty and fixed his punishment at five years' imprisionment; Ben Thacker guilty and fixed his punishment at two years' imprisonment; and John Ballard not guilty. Viceroy, Arthur Ray, and Ben appeal from the judgment entered upon the jury verdict.

Between the hours of 7:30 a. m. and 3:30 p. m. on December 6, 1972, someone entered the residence of Stanley Baker in rural Trigg County and took numerous

items, including a portable television set and a Bulova wrist watch. On that day Stanley Baker was at work on his farm; his wife was at school, as was their child. The house had been left unlocked. Approximately five days after the break-in, the Brison brothers, Ballard, and Thacker were arrested and charged with the crime.

At the time of the incident James Mathis was the sheriff of Trigg County. From an undisclosed source he concluded that an automobile bearing a Christian County license, prefix number 214, was involved. The car was described as a 1964 to 1967 model, Pontiac or Oldsmobile. Of the 1,000 Christian County numbers bearing the prefix 214, the sheriff and a state detective concluded that the suspected automobile was licensed under the number 214–170, their reasoning being that it was descriptive of an automobile belonging to one James Green who was variously described to the jury as being under investigation, a known thief, and in the penitentiary. With this information as a "lead," the sheriff caused the arrest of the two Brisons, Ballard, and Thacker.

A proper disposition of this appeal requires a detailed examination of the evidence introduced against each man.

On December 6, 1972, Christine Bush was operating a store at Caledonia in Trigg County, about four miles from the residence of Stanley Baker. At about noon or a little after Ben Thacker and two other men came into the store, purchased some gasoline, and used the telephone. Christine recognized Thacker because he had lived and worked in the neighborhood, but she did not know the other two men. She did not see the automobile that was being used by Thacker and his friends. Her identification was limited to Ben Thacker alone.

Laura Coleman, a neighbor, arrived at the Bush store at about 12:30 p. m. Ben Thacker and the other men were already in the store. She recognized Thacker, a Charles McKinney, and one of the Brisons,

who she later learned was Arthur Ray. While she was there Charles McKinney used the telephone. Upon leaving the store, she observed two other men in the back seat of a parked automobile. She described it as a blue Pontiac, model 1965 or 1966. She did not notice the license plate. (The Charles McKinney identified by Laura Coleman was described by Sheriff Mathis in his testimony as follows: "There was another fellow involved in the break-in and his name was Charles McKinney and we have sent him on to the penitentiary.")

Arthur Barber, who lives on the lane to the Riverbend Farm and the Baker residence, saw a car pulling out of the lane onto the main road. He described it as a "right new car, about a '68, green, sort of dark green," but did not know the make. He saw it pull out about "9 o'clock or 9:30 or 8 o'clock." He was unable to give the identity or number of passengers in the car.

Bob Brame lives across the road and opposite the entrance to the lane leading to the Baker residence. He testified that he saw a car come out the lane right after lunch (1 p. m.). He described it as being a "blue-green Pontiac, '62, '63, '64, or '65, or somewhere along there." He observed at least two passengers in the car but was unable to identify them other than "they were colored."

Except for testimony by Viceroy that he, Arthur Ray, John Ballard, and Ben Thacker had been together all day on December 6, 1972, and had, in fact, gone rabbit hunting along a creek a short distance back of the Bush store, the evidence above recounted is all that is in the record which purports to point a finger of guilt at Arthur Ray and John.

The position of Viceroy is complicated by further evidence concerning his misdeeds. On the afternoon of December 6, 1972, Viceroy pawned a portable television set at the Midway Pawn Shop at Fort Campbell. The owner produced a copy of

the receipt signed by Viceroy, identified him while he was in the custody of the police as the one who had pawned the television set, and again identified him at the trial, testifying further that he operated a clothing store in conjunction with the pawn shop and that he recognized Viceroy because he had been a customer in the clothing store. The television set was identified as being the one taken from the Baker residence. The watch was located by Ed Daugherty, a detective sergeant of the Kentucky State Police, at another pawn shop where a ticket had apparently been signed by Viceroy. However, no one at the shop was able to identify Viceroy.

From time to time we learn of the successful use of a so-called "red herring" to frustrate the objectives of certain persons. It would appear that here the "red herring," which happened to be a car owned by James Green, was used for the purpose of confusing everyone and thereby obtaining a conviction where evidence might not have justified the results. Ed Daugherty attempted to deliver the *coup de grace*. He testified that on December 6, 1972, although he was on vacation, the Trigg County sheriff called him in regard to the housebreaking. He was given the description of a car and the prefix numbers "214" of a license plate. James Edward "Bubber" Green, owner of a medium green 1965 Pontiac, license number 214–170, was at that time being investigated concerning a series of daytime break-ins in Christian County. With these facts at his command, Daugherty informed the sheriff that he "felt Green or some of his associates would be good suspects." At this point both his and the sheriff's testimony contains an ominously silent gap before we finally get to the four accused. We have been unable to determine what bearing the James Green car may have had on the proceeding, for there is not a shred of evidence in the record that any one of the accused was in or driving the James Green car on the day in question, or at any other time. In fact, Viceroy testified without

contradiction that the car that he, his brother, Ballard, and Thacker used on December 6 was owned by a man whom he knew only as "Middy." On that day the four of them, together with "Middy," went on a hunting trip which he described in his testimony. Notwithstanding this evidence, we find the record replete with evidence in regard to the James Green car. For example, note the following question and answer by Detective Daugherty:

"Q. Back earlier in your testimony you referred to a car with license number 214–170 and you say that you know that car was owned by James Green, is that correct?

A. I know that the car was owned by James Green and the car had a bent, I believe, left front fender and I also know that James Green is a known thief."

To this answer the defendants objected and the court sustained their objection, admonishing the jury not to consider the answer. Later on, the detective was asked where the Green car was, and his answer was to the effect that it had been sitting in Green's back yard and had been sitting there since before Green went to the penitentiary.

In spite of all the detective's familiarity with James Green, his activities, his automobile, his residence, and his whereabouts, he was forced to admit that he had never seen James Green in the company of the Brisons, Thacker, or Ballard, and that he had never observed anyone but James Green operating his car. Green was not named in the indictment, and no one ever hinted that he was involved.

We are of the opinion that the insertion of James Green into this proceeding, his car, his reputation as a known thief, and the fact that he was in the penitentiary were matters entirely without the record and could serve only one purpose, and that was to prejudice the rights of each defendant to even a tollerably fair trial. As if

the testimony of the detective did not draw the noose tight enough, that of Sheriff Mathis completed the act. Upon cross-examination, we find the following questions and answers:

"Q–51 Judge, did you take Ben Thacker and have him identified at any place?

A That's correct, we did.

Q–52 Where did you take him?

A I took him by Mrs. Bush's store— Mr. and Mrs. John Bush's store for he lied to us like a dog and said that he had not been in Trigg County.

OBJECTION BY THE HON. CHAPPELL WILSON:

Objection, that is an improper remark, move that it be stricken from the record and that the jury be admonished.

THE COURT:

Yes, that's improper, Sheriff. I will SUSTAIN the objection. Just tell what you did.

A I carried him by Mrs. Bush's store and she positively identified Ben Thacker of being in her store on December 6, Wednesday, and also two other fellows with him and one of them made a phone call probably to the home of Mr. Baker to see if he was home.

OBJECTION BY THE HON. CHAPPELL WILSON:

Object on the same grounds as in the previous objection (objection following Q–52) and ask for same ruling.

THE COURT:

Yes, Judge, you can't assume what the call was about. I will SUSTAIN the objection and the jury will not consider that."

\*   \*   \*   \*   \*   \*

"Q–68 And if there were five individuals and we have accounted for five people, where is James Green.

A There was another fellow involved in the break in and his name was Charles McKinney and we have sent him on to the penitentiary.

OBJECTION BY THE HON. CHAPPELL WILSON:

Objection, on the same grounds as previously, that is an improper remark, move that it be stricken and that the jury be admonished.

THE HON. GRADY RUFF:

Judge, he asked the question.

THE COURT:

I know, but he is going into some matters that are not applicable to this case and I admonish the jury not to consider that and I am SUSTAINING the objection."

At the close of the testimony of Sheriff Mathis, counsel for the accused moved for a mistrial on the grounds that the prejudicial remarks of the sheriff, as quoted, did so affect the jury's consideration of the case as to deny them a fair trial. The court overruled the motion. We have considered this entire record and all of the evidence and have concluded that the testimony of the sheriff, which was duly objected to, and the testimony of the state detective were both inflammatory and highly prejudicial and could have served no purpose other than to create in the minds of the jury the impression that the three accused were guilty by association, if for no other reason.

While it is true that in each instance the court sustained the objection and admonished the jury, we do not think that the admonition was sufficient to serve the purpose of destroying any prejudicial atmosphere that may have been created. Pruitt v. Commonwealth, Ky., 487 S.W.2d 940

(1972). We find merit in the argument here and must therefore reverse on this ground.

■■ As there will be another trial, we find it necessary to discuss other claimed errors. At the close of the evidence for the Commonwealth and again at the close of all the evidence, counsel for the accused moved for a directed verdict, which motion was overruled. Arthur Ray and Ben Thacker assert that it was error on the part of the court to overrule their motion for a directed verdict. We have detailed here all of the evidence connecting these two men with the crime charged. Their only sin, whether it be of omission or commission, was the fact that on that fateful day they were with Viceroy Brison, Jr., who apparently, at least, came into possession of some of the property stolen from the Baker residence. They were convicted because of their association rather than upon evidence of the crimes charged. We have held that neither motive alone nor motive plus opportunity, or even presence at the scene of a crime, is enough to justify a conviction. Marcum v. Commonwealth, Ky., 496 S.W.2d 346 (1973); Hodges v. Commonwealth, Ky., 473 S.W.2d 811 (1971). The evidence against Arthur Ray Brison and Ben Thacker did not support the submission of their case to the jury. If upon another trial the evidence is substantially the same, they will be entitled to a directed verdict of acquittal.

■ Ben Thacker and Viceroy Brison moved for a separation of witnesses pursuant to the requirements of RCr 9.48. They claim that the overruling of this motion was prejudicial error. Although RCr 9.48 provides that upon motion of either party the trial judge may exclude from the hearing or trial witnesses called to testify, we have held that whether such witnesses will be excluded rests within the sound discretion of the trial court. Webster v. Commonwealth, Ky., 508 S.W.2d 33 (1974). Our examination of the record, together with the court's reason for not enforcing the exclusionary rule, discloses that there was no abuse of discretion on the part of the trial court.

■ Viceroy objects rather strenuously to the fact that there was a rather repetitious series of questions, the total effect of which was to create the impression that he, by refusing to make any statement in regard to the housebreaking, demonstrated his own guilt. While it is true that there were a number of questions in regard to statements given when one question would have been sufficient, the record discloses that Viceroy did not object and consequently did not preserve this claimed error for appellate review.

■ Viceroy further claims that his in-court identification was so tained by a prior "show-up" procedure that it should have been excluded. While it is true that three police officers took Viceroy to the pawn shop where he was identified, the pawn broker, Frank Fennell, testified that he operated a clothing store in conjunction with the pawn shop, and that Viceroy had been a customer of the clothing store for some time. His identification at the trial was, therefore, independent of the confrontation at the pawn shop. Myers v. Commonwealth, Ky., 499 S.W.2d 277 (1973).

■ Ben Thacker says that the court erred in denying him a separate trial. We have held on numerous occasions that the granting of a separate trial is one of the discretionary functions of the trial court, and this court will not upset its ruling unless there is a clear showing of prejudice. Edwards v. Commonwealth, Ky., 500 S.W. 2d 396 (1973). Thacker presented no such showing.

The judgment is reversed for further proceedings consistent with this opinion.

REED, C. J., and PALMORE, JONES, LUKOWSKY, STERNBERG and CLAYTON, JJ., sitting.

All concur, except CLAYTON, J., who dissents.