COMMONWEALTH of Kentucky,
Appellant

v.

Christine GOSS, Appellee.

No. 2011–SC–000780–DG.

Supreme Court of Kentucky.

April 17, 2014.

As Modified April 28, 2014.

Jack Conway, Attorney General, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, for Appellant.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for Appellee.

Opinion of the Court by Justice NOBLE.

The Appellee, Christine Goss, was convicted of two counts of theft of identity under KRS 514.160 and found to be a persistent felony offender. Her convictions stem from allegations that she filed a tax return and obtained a tax refund in her daughter's name, and that she opened credit card accounts and obtained checks using her ex-husband's name. The Court of Appeals reversed both convictions, finding that there was insufficient proof that the Appellee committed identity theft and thus concluded that she was entitled to a directed verdict of acquittal. This Court granted discretionary review and, after a thorough review of the record, the judgment of the Court of Appeals is affirmed in part and reversed in part.

## I. Background

Goss's indictment and convictions arose from the following facts.

Vance Garrison, Goss's ex-husband, claimed to have experienced two incidents of identity fraud. He claimed that in November 2007, he began receiving telephone calls from several credit card companies stating that he owed them money on open credit accounts. Vance, claiming not to have opened these accounts himself, reported these accounts as fraudulent to the credit card company.

Vance also claimed that in April 2008, he received checks associated with an open checking account at Washington Mutual Bank. The checks were originally addressed to "Vance Garrison, 2118 Highway 490, Apartment 9, East Bernstadt, Kentucky," which was not his address.

Nevertheless, Vance received the checks at his post office box because an observant postal worker recognized Vance's name on the envelope, realized the address on the envelope was incorrect, and transferred it to his regular post office box. The package containing the checks was postmarked in April 2008. Vance recognized the address as a previous address of Goss.

The record shows that Vance filed an incident report with the Laurel County Sheriffs Department on May 13, 2008. The report, however, is not in the record, and its exact contents are not known to this Court.

The second series of alleged identity theft relates to Goss's daughter, Syreeta Garrison. Syreeta was in jail from March 21, 2008 to September 19, 2008 for welfare fraud. After she was released from jail, she and her husband, John Clancy, although estranged at the time, filed a joint state tax return for 2007. The couple filed their return with the Kentucky Department of Revenue on October 8, 2008. The October return reported that Syreeta had earned $551.00 while working at a local tobacco store and that John earned an income from a local bakery.

After the couple filed their joint return, John received a letter from the Kentucky Department of Revenue stating that the couple's joint tax return failed to reflect previous income reported by Syreeta on a tax return electronically filed in March 2008. The letter stated that Syreeta had failed to report $10,371.28 in wages from Sav–U–Mor, a grocery store in London, Kentucky, a $1,242 student interest loan deduction, and a $270 tax refund on the second tax return. As such, the Kentucky Department of Revenue adjusted the couple's joint return to reflect the additional income.

Syreeta claimed that she immediately believed her mother was responsible for filing the March return in Syreeta's name because her mother had been previously employed at Sav–U–Mor. Because of her suspicions, Syreeta requested a copy of all

the tax returns filed in her name for 2007. In response to her request, she received a copy of the October return, which she filed with her husband, and the electronically filed March return. The copy of the March return showed that it had been filed using Syreeta's name and social security number. But the address for the return—2118 Highway 490, Apartment 4, East Bernstadt, Kentucky—was not hers (nor was the employment information for the Sav–U–More income hers). Syreeta recognized the address as a former address of her mother.

Syreeta also claimed that she suspected her mother had taken out credit cards in her name while she was in jail. She filed incident reports with the Laurel County Sheriffs Department on two occasions in October 2008. Each report concerned different credit card accounts that were opened in her name, and contained general statements that she believed her mother was responsible for opening the accounts because many of the accounts had been opened while she was in jail. Although these police reports were filed, no additional investigation was done by the Laurel County Sheriff's Department at that time.

Based on these facts, Goss was indicted in this case for three counts of identity theft—one for both the credit cards and checks in her ex-husband's name, one for the credit cards in her daughter's name, and one for the tax return in her daughter's name—and was alleged to be a second-degree persistent felony offender.

The trial court granted a directed verdict of acquittal as to the charge based on credit cards in the daughter's name but allowed the other charges to go to the jury. The jury convicted Goss on the remaining two counts. Goss then entered into a sentencing agreement with the Commonwealth. Under this agreement, Goss pled guilty to being a second-degree persistent felony offender and agreed to a five year prison sentence for each conviction of identity theft enhanced to seven years, by virtue of her PFO status, with the sentences to be served concurrently for a total of seven years in prison.

The Court of Appeals reversed both convictions. The Court of Appeals found that Goss's motion for a directed verdict, which had not stated specific grounds, failed to preserve her claim for ordinary appellate review. The court therefore reviewed the claim for palpable error under Criminal Rule 10.26, which allows relief for an unpreserved error only if the error is palpable and affects a party's substantial rights and results in a manifest injustice. The Court of Appeals held that Goss met this high standard because there was insufficient evidence to prove each element of her convictions for identity theft under KRS 514.160(1)(b) and (c) beyond a reasonable doubt, and thus the trial court's denial of Goss's motion for a directed verdict constituted a violation of her due process rights under the United States and Kentucky constitutions. In analyzing the proof at trial, the Court of Appeals observed that the case against Goss consisted only of circumstantial proof, and that while direct evidence was not essential for an identity-theft conviction, the evidence had to show more than a mere suspicion of guilt. The court concluded that the evidence in this case did nothing more than raise a suspicion.

This Court granted discretionary review to address whether the proof in this case was sufficient to uphold Goss's conviction.

## II. Analysis

The Commonwealth's principal argument is that the Court of Appeals misapplied the palpable error standard when it concluded that there was a lack of proof "directly linking" Goss to the fraud against

her ex-husband or daughter, and thus, erroneously concluded that direct evidence was, in fact, essential for Goss's conviction for theft of identity. In doing so, the Commonwealth argues that the Court of Appeals failed to draw any reasonable inferences from the evidence presented that did, in fact, link Goss to fraudulent activity.

After a thorough review of the record, this Court affirms the judgment of the Court of Appeals in part and holds that there was insufficient evidence to sustain one of Goss's convictions, which is a palpable error in this case. The trial court further complicated this error by allowing Goss to be prosecuted for identity-theft for crimes involving the allegedly fraudulent obtaining of credit cards, which is not covered by KRS 514.160. We reverse on the Appellant's conviction based on the claims made by her daughter.

### 1. Goss's conviction for identity theft against Vance Garrison

Goss was convicted of identity theft against Vance Garrison for allegedly obtaining seventeen credit cards in his name and obtaining checks in his name on an account he did not open. The jury instruction did not distinguish between the credit cards and the checks, essentially treating them as one overall transaction involving the use of Vance's personal information.

█ First, this Court points out that Goss could not, as a matter of law, have been convicted of identity theft under KRS 514.160 for obtaining credit cards fraudulently because KRS 514.160(4) expressly excludes credit or debit card fraud under the statute.

Though the jury instruction on identity theft as to Vance did not specifically describe the credit card transactions, that the credit cards were part of the charged offense is clear. The Commonwealth presented testimony from Vance that Goss had fraudulently opened both credit card accounts and a checking account in his name. As to the credit card allegations, Vance testified that 17 credit cards had been opened in his name and that he began receiving calls from credit card companies in November 2007. Further, on cross-examination of Goss, the Commonwealth introduced a credit card application under Vance's name and asked Goss to explain why her former address and telephone number were on the form.

The Commonwealth's closing statement continually mentioned the words "credit card" and "credit card accounts." The Commonwealth directly stated: "You can use common sense to figure what kind of rigmarole and how many hoops these credit card companies are going to make [Syreeta] or Vance jump through to get the information that they need to try and get them to stop sending them bills and making phone calls about these fraudulent credit card accounts that have been opened up by this lady over here." As he made this statement, the prosecutor pointed to Goss.

After this proof, the jury was given the following instruction as to the charge relating to Vance Garrison:

You will find the Defendant guilty of Theft of Identity of Another Without Consent under this instruction if and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this County on or about the month of April 2008, and before the finding of the Indictment herein, she knowingly possessed or used Vance Garrison's personal information;

AND

B. That in so doing, she did so without Vance Garrison's consent;

AND

C. That said personal identification information was in the form of Vance Garrison's name;

AND

D. That she intended to possess or use Vance Garrison's personal identification information to represent that she is Vance Garrison;

AND

E. That in so doing, she intended to make financial or credit transactions.

The jury instruction tracked the language of KRS 514.160(1)(c),[1] the identity-theft statute under which Goss was indicted. Though the jury instruction identifies April 2008 as the relevant time frame for the crime, it is nevertheless evident, based on the proof and the prosecution's argument, that Goss was being prosecuted, in part, for obtaining the credit cards and that this instruction was intended to cover that behavior.

Goss, however, cannot be prosecuted for identity theft under KRS 514.160 for obtaining the credit cards because the statute expressly precludes it. The entire statute is subject to KRS 514.160(4), which states: "This section does not apply to credit or debit card fraud under KRS 434.550 to 434.730." KRS 434.550 to 434.730 is the Credit and Debit Card Crime Act. See KRS 434.550. KRS 514.160(4) prohibits the prosecution of a crime as identity theft if it falls under that act.

Obtaining a credit card by making a false statement about identity is a crime under the act, specifically KRS 434.570.[2] Absent the language of KRS 514.160(4), such conduct would also be the crime of identity theft under KRS 514.160. Indeed many of the crimes under the Credit and Debit Card Crime Act would also be crimes under KRS 514.160—but for the language in KRS 514.160(4). But we cannot ignore the language of KRS 514.160(4). That provision, when read together with the Credit and Debit Card Crime Act, evinces a clear legislative intent for credit

1. KRS 514.160(1) lays out the elements of identity theft and states:

 A person is guilty of the theft of the identity of another when he or she knowingly possesses or uses any current or former identifying information of the other person or family member or ancestor of the other person, such as that person's or family member's or ancestor's name, address, telephone number, electronic mail address, Social Security number, driver's license number, birth date, personal identification number or code, and any other information which could be used to identify the person, including unique biometric data, with the intent to represent that he or she is the other person for the purpose of:
 (a) Depriving the other person of property;
 (b) Obtaining benefits or property to which he or she would otherwise not be entitled;

 (c) Making financial or credit transactions using the other person's identity;
 (d) Avoiding detection; or
 (e) Commercial or political benefit.

2. KRS 434.570, which is titled "False statement as to identity or financial condition," states:

 In addition and supplemental to the acts proscribed under KRS 517.090, a person who makes or causes to be made, either directly or indirectly, any false statement in writing, knowing it to be false and with intent that it be relied on, respecting his identity or that of any other person, firm, or corporation, or as to a material fact about his financial condition or that of any other person, firm, or corporation, for the purpose of procuring the issuance of a credit or debit card, is guilty of a Class D felony.

and debit card crimes to be prosecuted separately from theft of identity crimes.[3]

At the very least, then, Goss's conviction would have to be reversed for a retrial on any theory supported by the law and evidence. The combination of the credit-card fraud (which cannot be sustained as a matter of law), and the check fraud (even if it could be sustained) in a single instruction on identity theft violates the requirement of a unanimous jury verdict. *See Travis v. Commonwealth*, 327 S.W.3d 456, 459–60 (Ky.2010). In essence, the jury was allowed to consider a legally impermissible theory of the crime along with a legally permissible one.

■ However, the Court recognizes that Goss was not prosecuted only for opening fraudulent credit card accounts, but also for fraudulently obtaining checks on an account in her ex-husband's name. There is no question that using another person's identity, without consent, to obtain checks or open a checking account falls under the identity-theft statute's purview. Thus, to the extent that the evidence was sufficient to sustain a conviction for that conduct, Goss could be retried for it. *See Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013). The question, then, is whether the proof was sufficient, i.e., whether Goss was entitled to a directed verdict of acquittal on the identity-theft count as it related to the checks.

As to that theory of the crime, the Commonwealth presented the following evidence to show that Goss had opened the checking account in her ex-husband's name: (1) Vance's testimony that the only person other than himself who knew his social security number was Goss (though he admitted on cross-examination that "two or three" people, including Goss, might know his social security number),[4] (2) that the checks on the account were addressed to a former address of Goss, and (3) testimony from George Gray, Goss's former landlord, that Goss had lived at 2118 Highway 490, Apartment 9 in 2004 and had stayed for nine or ten months, and that she had lived there again (in a different apartment, Apartment 4) for about four months around March 2007. These three bits of information constituted the entirety of the Commonwealth's proof that Goss had opened the checking account.

At best, the evidence shows that Goss had access to her ex-husband's social security number and that the address was one she had used in the past. Admittedly, this shows she had the means and possibly the opportunity to commit the crime. But that is it. The Court of Appeals characterized the Commonwealth's evidence as "[showing] a complete lack of proof directly linking" the Appellee to the frauds in her ex-husband's name.

■ Direct proof, however, is not necessary. It has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence. *See Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky.2012) (citing cases going back to 1937). Moreover, when looking at the trial court's failure to grant a directed verdict, an appellate court should not reverse unless "it would be clearly unreason-

---

3. That the identity-theft statute allows, as an element, intent to engage in credit transactions does not change this result. There are many types of credit transactions aside from those involving credit cards. Non-consensual use of another person's personal information in such a transaction could be prosecuted as identity theft.

4. This Court can only assume that Vance's social security number is relevant to opening up a checking account of the type in this case as there was no testimony that it was necessary.

able for a jury to find guilt." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). This same standard applies when the proof consists of circumstantial evidence, which "is sufficient to support a criminal conviction as long as the evidence taken as a whole shows that it was not clearly unreasonable for the jury to find guilt." *Bussell v. Commonwealth*, 882 S.W.2d 111, 114 (Ky.1994). In the present case, the evidence falls below this standard.

■ Circumstantial evidence has its limits. Circumstantial evidence is evidence that makes the existence of a relevant fact "more likely than not." *Rogers v. Commonwealth*, 315 S.W.3d 303, 311 (Ky.2010) (citing *Timmons v. Commonwealth*, 555 S.W.2d 234, 237–38 (Ky.1977)). Such proof "must do more than point the finger of suspicion." *Id.* (citing *Davis v. Commonwealth*, 795 S.W.2d 942, 945 (Ky. 1990)). A conviction obtained by circumstantial evidence cannot be sustained "if [the evidence] is as consistent with innocence as with guilt." *Collinsworth v. Commonwealth*, 476 S.W.2d 201, 202 (Ky.1972).

The Commonwealth did not present any evidence about what personal information was needed to open the checking accounts. Indeed, the jury instruction only contemplated that Goss used Vance Garrison's name. None of the checks were ever used by anyone, so it was impossible to trace them to Goss. No checks were ever discovered in Goss's possession. The only thing connecting Goss to the checks was that her former address—a piece of easily acquired information—was on the checks and that she allegedly knew Vance's personal information.

If the Commonwealth were correct that the evidence it presented was sufficient to convict Appellee, it would have to concede that a vengeful person could open a checking account in his own name, but with the address of his personal enemy, and that alone could sustain a conviction of the enemy. Common sense dictates that cannot be the case.

■ The best characterization of the Commonwealth's proof is that it showed that Goss had the means and opportunity to commit the fraud. But the evidence also shows, with equal force, that other people could have committed the crime. The evidence related to the fraudulent checks does not allow a reasonable jury to find guilt beyond a reasonable doubt because there is little assurance that Goss rather than someone else committed the crime. Evidence showing only an opportunity and ability to commit the crime "is insufficient to survive a motion for a directed verdict." *See Johnson v. Commonwealth*, 405 S.W.3d 439, 447 (Ky.2013); *see also, Acosta v. Commonwealth*, 391 S.W.3d 809, 820 (Ky.2013); *Brison v. Commonwealth*, 519 S.W.2d 833, 838 (Ky.1975); *Marcum v. Commonwealth*, 496 S.W.2d 346, 349 (Ky.1973) ("neither motive alone nor motive plus opportunity (or presence at the scene) is enough to justify a conviction"). The Commonwealth must tie the defendant to the crime, even if only indirectly. In short, the Commonwealth provided neither "evidence of substance" nor "more than a mere scintilla of evidence" that Goss committed the crime. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky.1983)). Goss, therefore, was entitled to a directed verdict of acquittal on this count.

■ Moreover, the failure to grant the directed verdict in this case was palpable error. Under Criminal Rule 10.26, an unpreserved error may only be corrected on appeal if the error is both "palpable" and "affects the substantial rights of a party" to such a degree that it can be

determined "manifest injustice resulted from the error." For error to be palpable, "it must be easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). The rule's requirement of manifest injustice requires "showing ... [a] probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006). Or, as stated elsewhere in that decision, a palpable error is where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

 A failure to grant a directed verdict based on the obvious inapplicability of a criminal statute or the insufficiency of the proof is necessarily palpable error under this standard:

> That the proof in a criminal prosecution must be sufficient to allow a reasonable jury to find guilt beyond a reasonable doubt is one of the bedrocks of the American justice system and is one of the core protections of due process. That alone would make the type of error presented here jurisprudentially intolerable."

*Acosta v. Commonwealth*, 391 S.W.3d 809, 819 (Ky.2013). And it is clear that a different result would occur, since a defendant convicted on insufficient proof should be acquitted. A conviction based on insufficient proof is by definition a manifest injustice.

For these reasons, this Court holds that the Court of Appeals was correct when it reversed Goss's conviction on the grounds that there was insufficient evidence that she opened the checking accounts in Vance's name.

### 2. Goss's conviction for identity theft against Syreeta Garrison

The Commonwealth also challenges the Court of Appeals' reversal of Goss's conviction for allegedly filing a fraudulent tax return in her daughter's name. In this count, Goss was charged under KRS 514.160(*l* )(b). Under that part of the statute, the Commonwealth was required to prove beyond a reasonable doubt that Goss knowingly used her daughter's name and social security number with the intent to obtain benefits (a tax refund) to which she was not entitled.

At trial, the Commonwealth presented two central pieces of proof: (1) Syreeta's testimony and (2) the March tax return. Syreeta testified that Goss knew her social security number because she had previously helped Syreeta apply for college financial aid and that no one else knew the number.[5] The March tax return was filed online but listed an address Goss had used shortly before the return was filed. The return showed income in the amount of $10,371.00 from Sav–U–Mor, which is where Goss had worked. The employer tax identification number used on the return was that of Sav–U–Mor. This information matched that on Goss's W–2 for 2007. The return indicated that the filer was entitled to a refund of $270, which was sent to a bank in South Dakota. (The Commonwealth presented no proof about this account, such as the name of the holder of this account, when the account was created, or even whether the money from the refund was in the account.)

This proof was buttressed by testimony from Anne Roe, an employee of the Special Investigations Division of the Kentucky Department of Revenue. She stated that

---

**5.** The testimony of Syreeta that her mother was the only one familiar with her social security number is questionable, especially since she testified that not even her husband knew the number. The joint tax return she filed with her estranged husband shows that he had to have her social security number to file the return.

an electronic tax filing or "e-file" could be performed by anyone in any location with a computer. Her testimony further described the process of e-filing as being a series of "pop-up" windows on a computer screen that would prompt the filer to type-in relevant information from their W–2 or other financial form. Roe acknowledged the system relied on the integrity of the tax payer to put correct information into the system.

■■■■ As stated earlier, circumstantial evidence "must do more than point the finger of suspicion." *Rogers,* 315 S.W.3d at 311 (Ky.2010) (quoting *Davis,* 795 S.W.2d at 945). But it has never been the case that the Commonwealth's evidence must "rule out every hypothesis except guilt beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Indeed, a conviction based on circumstantial evidence may be sustained so long as "it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt." *Graves v. Commonwealth,* 17 S.W.3d 858, 862 (Ky.2000).

■■■■ This Court finds that the Court of Appeals' conclusion that the trial court erred by not granting Appellee's motion for a directed verdict based on insufficient evidence as to Syreeta's claims was erroneous. Although the proof at trial was not overwhelming, there was sufficient circumstantial evidence to conclude that Goss, rather than someone else, filed a false tax return in her daughter's name. The Commonwealth presented testimony from Syreeta that her mother had previous access to her social security number because she had helped her apply for student loans. The March return exactly mirrored Goss's own W–2 information based on a job where Goss was employed rather than Syreeta, and only failed to flag the revenue cabinet's attention because the return was e-filed and the refund amount was so small

that it did not trigger an audit. This evidence was compounded by the fact that it was Goss's previous address that was on the March return. But most significantly, there was no evidence that anyone other than the Goss ever had access to the unique information contained in her W–2.

This last fact certainly makes the proof on this count beyond a mere scintilla of evidence—and thus would allow a jury to reasonably infer that Goss actually committed the crime. The proof which showed that some of Goss's *own* non-public information (the contents of her W–2) was used in the return tends to connect her directly to the crime, especially since there was no testimony that anyone else had access to it. This shows more than the mere opportunity to commit the crime and is instead a concrete link between Goss and the crime. This does more than point the finger of suspicion: it is substantive evidence.

Admittedly, this evidence could *theoretically* also be consistent with another person's guilt, namely, Syreeta, since her personal information was also used on the form, and Syreeta had access to her mother's home so could have possibly obtained Goss's W–2. The difference, of course, is that the Commonwealth offered testimony that Goss *did* know Syreeta's information, whereas at best Syreeta only *might* have had the chance to obtain Goss's W–2.

Comparison of the situations of the two women illustrates the difference between inadequate circumstantial evidence and sufficient evidence. Indeed, this case presents a good example of the smallest quantum of proof between a case with mere opportunity (e.g., if the proof showed, as it does above, that Goss had only an opportunity to commit the crime against her husband) and a sufficient case based on opportunity and some other *fact* suggesting that the defendant likely exercised that opportunity. The use of both

Goss's and her daughter's personal information combined with proof that Goss had the opportunity to access her daughter's information but no proof that anyone else had access to *her* information is enough to sustain the verdict.

On appeal, the standard for a directed verdict is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then ... is [the defendant] entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187. This Court cannot say that it would be clearly unreasonable to find guilt upon this evidence. Therefore, the trial court did not err in denying Goss's motion for a directed verdict on this count. For that reason, the Court of Appeals erred in reversing the conviction.

### III. Conclusion

For the foregoing reasons, the judgment of the Court of Appeals is affirmed in part and reversed in part. The Court of Appeals' reversal of Goss's conviction of identity theft relating to her ex-husband is affirmed, but the reversal of Goss's conviction of the identity theft relating to her daughter is reversed, and the conviction reinstated, for the reasons stated above.

All sitting. ABRAMSON, KELLER and VENTERS, JJ., concur. SCOTT, J., concurs in part and dissents in part by separate opinion in which MINTON, C.J., and CUNNINGHAM, J., join.

SCOTT, J., concurring in part and dissenting in part:

While I concur with the reinstatement of Goss's conviction for identity theft relating to her daughter and the reversal of Goss's conviction for identity theft relating to her ex-husband, I dissent from that portion of the majority's opinion declining to remand to the trial court for Goss to be retried for identity theft related to her ex-husband on a theory of check fraud.

The majority concludes, and I agree, that Goss's conviction of identity theft related to her ex-husband must be reversed due to her being charged, in part, under a theory of credit card fraud, which is not under the purview of the identity theft statute. However, as the majority acknowledges, Goss could be retried for identity theft under the sole theory of check fraud, which does fall under the purview of the statute. The majority refuses to do this because it found there to be a lack of evidence to support a conviction. I simply disagree. In my opinion there is an abundance of circumstantial evidence linking Goss to the checking account opened in her ex-husband's name such that a jury could reasonably infer that Goss was the person who opened the account. Accordingly, I would remand this charge for further proceedings with directions that any retrial on this charge include a jury instruction limiting the identity theft charge to check fraud.

As the majority notes in its opinion, the Commonwealth is allowed to prove all of the elements of a crime by circumstantial evidence. *Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky.2012). Circumstantial evidence "is sufficient to support a criminal conviction as long as the evidence taken as a whole shows that it was not clearly unreasonable for the jury to find guilt." *Bussell v. Commonwealth*, 882 S.W.2d 111, 114 (Ky.1994). Here, there is plainly sufficient circumstantial evidence to a support a conviction for identity theft under a theory of check fraud. Four points of evidence to be exact!

First, the Commonwealth provided Goss's ex-husband's testimony that he received checks on an account in his name that he did not open. Second, Goss's ex-husband stated that Goss was one of only two or three people that would possibly know his social security number in order

to be able to open the account. Third, the mailing address on the checks was not his—he only received them because a postal worker recognized his name and placed the checks in his post office box. In fact, the mailing address for the checks was 2118 Highway 490, Apartment 9, East Bernstadt, Kentucky, which Goss admitted was her former address. And, fourth, in the conviction of identity theft relating to Goss's daughter, the return mailing address on the fraudulent tax return was also a former address of Goss, albeit a different one this time—2118 Highway 490, Apartment 4, East Bernstadt, Kentucky.

Based on the totality of this evidence, a jury could reasonably infer that Goss opened a checking account in her ex-husband's name and was having the checks mailed to her former address. Given Goss's knowledge of her ex-husband's social security number, and the fact that the fraudulent checks in her ex-husband's name and the fraudulent tax return in her daughter's name were both directly addressed to a former residence of Goss, it is not "clearly unreasonable" for a jury to have convicted Goss on a charge of identity theft under the theory of check fraud. *Bussell, supra.* Therefore, though the conviction must be reversed on the separate issue of the impermissible jury instruction, it should, nonetheless, be remanded for retrial on a theory of check fraud.

For the foregoing reasons, I concur in part and dissent in part, and would remand Goss's conviction of identity theft related to her ex-husband for retrial under the theory of check fraud.

MINTON, C.J., and CUNNINGHAM, J., join.