RENDERED: JULY 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0930-DG

ANTHONY WOODS                                        APPELLANT

v.               ON DISCRETIONARY REVIEW FROM
JESSAMINE CIRCUIT COURT
HONORABLE C. HUNTER DAUGHERTY, JUDGE
ACTION NO. 18-XX-00006

COMMONWEALTH OF KENTUCKY                       APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: DIXON, KRAMER, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: This matter is on discretionary review from the opinion and order of the Jessamine Circuit Court affirming Anthony Woods's conviction for driving under the influence (DUI) in the Jessamine District Court. We have reviewed the record in its entirety, as well as relevant case and statutory law, and we reverse and remand the decision of the Jessamine Circuit Court.

The facts leading to Woods's arrest were summarized by the circuit court in its May 15, 2019, order affirming the district court, namely:

> On October 3, 2017 Anthony Woods was arrested for DUI by Officer Gideon Brewer. Officer Brewer was working patrol when he was dispatched to Waffle House by Lt. Godsey in response to an anonymous call received at 12:48:21 a.m. by the 911 operator that there was a black pickup truck in the Waffle House parking lot with a male subject "passed out" in the driver's seat. Dispatch records reflect a time of dispatch and time of arrival only seconds apart. Officer Brewer testified that despite what the records show, he was not on the scene within one second of being dispatched. When Officer Brewer turned onto Main Street from the bypass he saw a black pickup truck in front of the business with the headlights and brake lights illuminated. Officer Brewer parked his vehicle and approached the truck. Upon approach he observed the head lights and tail lights were not illuminated. He also observed [Woods] laid back in the driver's seat. He testified that [Woods] appeared to be asleep and the transmission of the vehicle was in park. The engine was not running, and the key to the vehicle was not in the ignition. [Woods's] foot was not on the accelerator or the brake pedal. Officer Brewer noted that his body camera shows that [Woods's] truck was parked over the line into two parking places or "double parked." Officer Brewer knocked on the door once, and [Woods] did not wake. When Officer Brewer knocked the second time, [Woods] raised up, grabbed the keys from the center console, and put the key in the ignition, without turning on the engine. Officer Brewer testified that [Woods] attempted to roll the window down, but it was already down and that from immediate observation, [Woods] appeared to him disoriented and under the influence. In response to questioning, [Woods] told Officer Brewer that he had "probably four or five" drinks (he later referred to cocktails) and that his last drink was "at ten [or] eleven.["] He also said, "I was down at the

bar and come up here to get something to eat," and "I was at 5 O'clock [sic] Somewhere and up there at Joe's Cock and Bull." In response to the officer's question of "So that's where you left from to come here?" [Woods] answered "yeah." [Woods] did not say specifically that he had driven the truck or parked it in the Waffle House parking lot, but he told Officer Brewer he went to the Waffle House to eat and that "I just figured it would be better to stop here a minute to get on the road." [Woods] also told Officer Brewer he was staying at "Hometown" and would be leaving Waffle House to go to that location.

When Officer Brewer removed [Woods] from the vehicle, [Woods's] boots were off, his belt was unbuckled, and his pants were unzipped. [Woods] explained that he had unbuttoned his pants and taken his boots off after eating at the restaurant so he could sleep comfortably. Officer Brewer administered Field Sobriety Tests which showed indications that [Woods] was impaired. After the administration of the first test, [Woods] told the officer that he could not perform additional tests. Officer Brewer then requested another officer for the administration of the PBT [preliminary breath test], which showed a presence of alcohol.

Officer Brewer arrested [Woods] following his performance of the PBT. When he was told he was being arrested and charged with DUI, [Woods] protested and repeatedly ask[ed] the officer how he could be charged with that offense when he was not driving the vehicle. Officer Brewer responded by saying "because when I pulled up you were sitting here with your brake lights on and then you turned your headlights off when I turned the corner." [Woods] continued to protest and complained that Officer Brewer had not observed him driving the vehicle. Officer Brewer, or another officer at the scene, responded "it doesn't matter if we saw you drive here, you were in the driver's seat which means you are in control of the vehicle." [Woods] told Officer Brewer that

he could understand being charged with public intoxication but not being charged with driving under the influence.

On cross-examination, Officer Brewer acknowledged that he was unable to state the condition of [Woods's] sobriety when he left the bar in Nicholasville or when he arrived at the restaurant. He was also unable to testify that [Woods] had driven the vehicle to the Waffle House restaurant or that he had parked the vehicle at that location. Officer Brewer admitted that he didn't search the vehicle for alcoholic beverages or check the engine or hood of the truck to determine whether it was warm to the touch indicating recent operation. Finally, Officer Brewer again stated his belief that if a suspect is found sitting drunk in a parked vehicle he is driving under the influence regardless of other circumstances.

. . .

At the conclusion of the case the trial court found [Woods] guilty of DUI, 1st Offense.

(Citations to video recording omitted.) The circuit court affirmed the conviction, stating: "Given the evidence in this case, which was thoroughly reviewed and considered by the court as reflected in its findings as stated on record, there was sufficient evidence for the court to conclude that [Woods] was guilty beyond a reasonable doubt of operating a motor vehicle while under the influence of alcohol." The circuit court cited *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991), in support of affirming Woods's conviction.[1]

---

[1] "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a

This Court granted discretionary review to consider whether the evidence was sufficient to convict Woods for operating a motor vehicle under the influence. Woods argues that it was not, and we agree.

In *Wells v. Commonwealth*, 709 S.W.2d 847 (Ky. App. 1986), this Court developed a four-factor test to determine whether a person operated or was in actual physical control of a motor vehicle, namely: "(1) whether or not the person in the vehicle was asleep or awake; (2) whether or not the motor was running; (3) the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location; and (4) the intent of the person behind the wheel." *Id*. at 849.[2]

Here, the facts are not in dispute that Woods was asleep behind the wheel of his vehicle. The officer testified that he had to awaken Woods in order to speak with him. The motor was not running, and the vehicle was parked off-street in the restaurant's parking lot. As for "all of the circumstances bearing on how the vehicle arrived at that location[,]"[3] the Commonwealth was unable to establish the

---

directed verdict of acquittal." *Benham*, 816 S.W.2d at 187 (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)). *See also Perdue v. Commonwealth*, 411 S.W.3d 786, 790 (Ky. App. 2013).

[2] Although *Wells* predates the current version of Kentucky Revised Statutes (KRS) 189A.010, its logic remains intact. *See*, *e.g.*, *Commonwealth v. Crosby*, 518 S.W.3d 153 (Ky. App. 2017); *infra* at p. 6.

[3] *Wells*, 709 S.W.2d at 849.

facts on how Woods arrived in the parking lot other than the officer's testimony that "it doesn't matter if we saw you drive here, you were in the driver's seat which means you are in control of the vehicle." The officer's testimony on cross-examination confirmed that he possessed no additional information bearing on the vehicle's arrival in the parking lot.

> When there is no evidence to determine whether a driver became intoxicated before or after parking the vehicle and was discovered before any new driving could commence, as in *Wells*, 709 S.W.2d at 850, or it was uncontested that the intoxication occurred after the vehicle was properly parked and before any new driving could commence, as in *Harris* [*v. Commonwealth*], 709 S.W.2d [846,] 847 [(Ky. App. 1986)], the fourth *Wells* factor, intention, becomes key in determining whether there is probable cause to believe a person behind the wheel violated KRS 189A.010. In *Wells*, 709 S.W.2d at 850, the Court stated that any inference that Wells planned to operate the vehicle from his position in the driver's seat was "negated by the facts that the transmission was in neutral, and the parking brake was engaged . . . [and Wells] was asleep . . . ." Merely starting the vehicle's engine was not an exercise of actual physical control. The same was true in *Harris*, 709 S.W.2d at 847, where the key was turned to "on" and Harris was asleep in the driver's seat.

*Commonwealth v. Crosby*, 518 S.W.3d 153, 158 (Ky. App. 2017).

Thus, the question became whether Woods intended to operate the vehicle in his current condition which was admittedly impaired. In *Crosby*, the driver was legally parked on the street, behind the wheel, with the engine running and lights illuminated. But she insisted that she only intended to smoke a cigarette

-6-

and answer text messages while she was in the car, not drive it. In analyzing the issue, the *Crosby* Court stated: "In the current case, the focus is not on whether Martin was intoxicated when she drove her vehicle to its parked location. Instead, the focus is on whether Martin in returning to her vehicle after becoming intoxicated, had a current intent to drive." *Crosby*, 518 S.W.3d at 157. "[T]he person's intent must be found from all the available information at the scene." *Id.* at 158.

The Commonwealth argues that sufficient circumstantial evidence, and reasonable inferences drawn therefrom, existed to support beyond a reasonable doubt that Woods intended to drive, citing *Blades v. Commonwealth*, 957 S.W.2d 246, 250 (Ky. 1997). *See also Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). We disagree. Woods, with the ignition off, his pants unzipped for comfort, his belt unbuckled, his boots off, and his seat in a reclined position, clearly intended to rest rather than to drive. Even though the officer felt certain that he had seen the pickup truck's headlights illuminated when he pulled into the parking lot, he did not check the vehicle's hood to see if it was still warm from the engine running. Footage from the officer's body camera showed that Woods had difficulty awakening when the officer tapped on the door. With the focus on whether Woods intended to operate the vehicle, the facts and inferences surrounding his arrest were at least as "consistent with innocence as with guilt[,]"

not guilt beyond a reasonable doubt.  *Commonwealth v. Goss*, 428 S.W.3d 619, 626 (Ky. 2014) (citation omitted).  *See also Commonwealth v. James*, 586 S.W.3d 717, 722 (Ky. 2019); *and McGuire v. Commonwealth*, 595 S.W.3d 90, 97 (Ky. 2019), *reh'g denied* (Mar. 26, 2020).

We accordingly reverse the Jessamine Circuit Court's order affirming the district court's judgment of conviction for operating a motor vehicle under the influence, and we remand the cause for entry of a judgment of acquittal.

ALL CONCUR.

BRIEF FOR APPELLANT:

David Russell Marshall
Keene, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Heather Warren
Special Assistant Attorney General
Nicholasville, Kentucky