# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 28, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0039-MR

JOHN RAY WILLIAMS                                                    APPELLANT

|  | ON APPEAL FROM GRAVES CIRCUIT COURT |
|---|---|
| V. | HONORABLE TIMOTHY C. STARK, JUDGE |
|  | NO. 19-CR-00183 |

COMMONWEALTH OF KENTUCKY                                    APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

John Ray Williams was convicted of one count of sexual abuse in the first degree and was found by the jury to be a first-degree persistent felony offender (PFO). He was sentenced to 20 years in prison. He appeals to this Court as a matter of right. Williams raises three issues on appeal. First, whether the trial court erred when it admitted evidence relating to the disappearance or destruction of certain items of evidence. Second, whether the trial court improperly permitted testimony which purportedly served to bolster the victim's testimony. And third, whether the trial court erred by answering the jury's requested clarification of testimony during deliberations. Finding no reversible error on the part of the trial court, we affirm the conviction.

# I.  FACTS AND PROCEDURAL BACKGROUND

John Ray Williams (Williams), Jennifer Giugler, Matt Williams, and E.L. resided in the same house together in Mayfield[1]. Together, they resided there from April of 2014 until February of the next year. E.L. was eight years old at the time. All the adults in the home worked full time. Sometimes, Williams would get off work early, and because of this, he would often be the only adult present with E.L in the home when she got home from school.

On one of those occasions when Williams and E.L. were home together, E.L. testified she was in the living room watching television on the couch. Williams sat beside her and grabbed her arm which prevented her from moving away from him. He put his other hand down her pants and touched her vagina over her underwear. She was unable to break free. He eventually stopped and warned her to not tell anyone. He said if she told anyone he would go away, and the rest of the family would blame her. Thus, she did not disclose this to anyone until years later.

In March of 2019, E.L. was in the seventh grade. She was living with Leslie Williams[2] at the time. As part of the middle school curriculum, she was enrolled in a health education class. Leslie thought it would be a good time to discuss the issues of sex, consent, and the difference between appropriate and inappropriate touching. Leslie noticed E.L. seemed sad and withdrawn after

---

[1] Jennifer Giugler was John Ray Williams's girlfriend.  Matt Williams is his son and the father of E.L.

[2] Although Leslie Williams is no longer married to, or living with E.L.'s father, Matt Williams, both E.L. and Leslie Williams refer to their relationship as a mother-daughter one.

discussing these topics. Leslie asked her if there was anything she wanted to discuss. E.L. was reluctant to do so because she did not want Leslie or Matt to be mad at her.

Leslie had a friend, LeeAnn Pilgrim, who had training in sexual-assault trauma and counseling. Leslie thought that E.L. might be more comfortable talking with someone else and asked her if she would like to speak with Pilgrim. She agreed and spoke with Pilgrim the next day. It was then that E.L. disclosed that Williams had sexually abused her. Pilgrim gave Leslie a phone number to call and report the allegations. Later that day, E.L. also told Leslie about the allegations. Leslie called and made a report that day. The police opened an investigation, and E.L. was interviewed at the Lotus Center, a child advocacy center. During the forensic interview she repeated the allegations.

Leslie informed Matt Williams[3] about the allegations against his father and the ongoing investigation. From then on, they did not allow Williams to have any contact with E.L. and did not inform him about the ongoing investigation. Two months went by and Williams grew suspicious. He went to Matt's house to ask why they had not been visiting. E.L. appeared terrified so Matt sent her to her bedroom. When Williams came to the door Matt told him he was not welcome there and told him to stay away. Matt did not give Williams any reason for this and upon hearing it, Williams burst into tears. He then told Matt not to believe anything that was said.

---

[3] At the time of E.L.'s disclosure, Matt and Leslie were living separately and were no longer married.

Later, Matt met his father's girlfriend Jennifer Giugler at WalMart. Matt knew that Giugler had grandchildren and they were frequently at her and Williams's house. Matt told her about the ongoing investigation, and she agreed to not let Williams know about the allegations. Giugler's sister is a police officer in Illinois. After speaking with her sister and upon her advice, Giugler went through Williams's belongings at their residence. During her search Jennifer found a trunk located in the garage. Inside of this trunk was a bag filled with children's underwear. She took a picture of the children's underwear and put them back in the trunk and put it away. Giugler then went to Matt and showed him the picture of the underwear. Matt identified one of those pairs as belonging to E.L. Giugler later checked on the trunk and the bag filled with underwear was gone. Around the same time a computer laptop that Williams frequently used went missing. Williams also showed Giugler that his cellphone had been destroyed, purportedly by his running over it with a lawnmower. The disappearance of the underwear, laptop, and the destruction of the cellphone all occurred approximately one week prior to the arrest of Williams.

Williams was indicted for sexual abuse in the first-degree on May 10, 2019. He was arraigned on June 3, 2019, in Graves Circuit Court. He entered a not guilty plea. The Commonwealth filed several notices under KRE 404(c) to introduce the photo of the children's underwear and testimony regarding it, the missing laptop and the destroyed cellphone. Williams filed a written objection. He also filed a separate motion in limine, arguing that any testimony about Williams's previous conviction for sex crimes would be prejudicial. The trial

court granted Williams's motion in limine but overruled his objection to the KRE 404(b) material. In this appeal however, Williams does not contest the admission of the photo or testimony regarding the bag filled with children's underwear. He does maintain that allowing the testimony regarding the laptop and the cellphone was error. Williams also contends that the trial court erred when it permitted Leslie Williams, Nicole Wadley, LeeAnn Pilgrim, and Detective Jessup to testify. Williams claims that by allowing the testimony of these four individuals it served to impliedly bolster the testimony of E.L. Finally, during deliberations the jury asked a question regarding the testimony of E.L. They asked for clarification on what word she used in a specific conversation. Williams argues the trial court should have played the testimony back instead of answering the question.

On November 5, 2020, the jury found Williams guilty of sexual abuse in the first-degree and of being a persistent felony offender in the first-degree. The jury recommended a sentence of 20 years which the trial court followed. We now address the merits of the appeal.

## II.    ANALYSIS

Evidentiary rulings by the trial court are reviewed for abuse of discretion. *Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky. 2007). The test for abuse of discretion is whether the trial court's ruling was arbitrary, unfair, unreasonable or unsupported by sound legal principles. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

5

**A. The trial court's ruling regarding the laptop and cellphone was proper under KRE 404(b).**

The laptop and the cellphone were admitted after the Commonwealth filed notice under KRE 404(c).[4] The trial court held a conference on these issues just prior to jury selection. Before ruling on the matter, the trial court asked several questions of the Commonwealth. The trial court inquired if the Commonwealth would be able to show that Williams knew he was being investigated. Similarly, the trial court asked if the Commonwealth could show that Williams was especially protective of the cellphone and laptop. KRE 404(b) states as follows:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

This list as shown above in KRE 404(b)(1) is illustrative rather than exhaustive.

*Barth v Commonwealth,* 80 S.W.3d 390, 403 (Ky. 2001). One of the long

---

[4]KRE 404(c): Notice requirement. In a criminal case, if the prosecution intends to introduce evidence pursuant to subdivision (b) of this rule as a part of its case in chief, it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence. Upon failure of the prosecution to give such notice the court may exclude the evidence offered under subdivision (b) or for good cause shown may excuse the failure to give such notice and grant the defendant a continuance or such other remedy as is necessary to avoid unfair prejudice caused by such failure.

recognized unenumerated purposes that is permissible under KRE 404(b) is any evidence that shows consciousness of guilt. *Rodriguez v. Commonwealth,* 107 S.W.3d 215, 219-220 (Ky. 2003). This includes spoliation of evidence. *Daugherty v. Commonwealth,* 467 S.W.3d 222, 230 (Ky. 2015).

This Court uses the framework as set forth in *Bell v. Commonwealth* when analyzing 404(b) evidence. 875 S.W.2d 882, 889-890 (Ky. 1994). First, the court should determine if the evidence is relevant for a purpose other than bad character or a propensity to engage in criminal conduct similar to that charged in the present matter. Second, the court must evaluate whether the proffered evidence is sufficiently probative to show that the defendant engaged in the conduct in question. *Id.* Last, the court must guard against the possibility that the potential for prejudice will substantially outweigh the probative value. *Id.*

> The Kentucky Rule of Evidence (KRE) 401 defines relevance as follows:
>
> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Understanding the timeline in this case is essential when conducting this analysis. Williams showed up at his son Matt's house after he had been absent for two months. Williams was then informed he was barred from the house with no explanation.  At this point Williams wept and told his son "not to believe anything that was said." After learning from Matt about the allegations, Giugler discovered the underwear. One week prior to Williams's arrest, Giugler

7

discovered the underwear and laptop had disappeared. Williams also informed her that his cellphone was now destroyed. Matt and Giugler both testified Williams was especially protective of these items. He told people who used the computer not to look at the photos. Williams was aware allegations had been made against him when he told his son not to believe anything that was said. The laptop and the underwear disappeared, and the cellphone was destroyed only after the defendant became aware of the investigation. The trial court ruled this evidence admissible. We agree. The contemporaneous destruction and removal of three separate pieces of evidence which occurred after Williams was aware of an investigation is relevant to his state of mind. It is relevant because it demonstrates a consciousness of guilt.

When determining the probativeness of other bad acts, the trial court should evaluate whether the jury could draw a reasonable inference that the acts occurred and the defendant committed them. *Parker v. Commonwealth,* 952 S.W.2d 209, 214 (Ky. 1997).

In this case, Giugler testified she owned a laptop that Williams primarily used. According to her, Williams used it almost exclusively. Giugler also told the jury that this same laptop disappeared around the same time as Williams showed her his cellphone had been destroyed. Giugler also told the jury about the underwear of E.L. in a storage container in Williams's house that she shared with him. She took a photograph of the underwear and it was introduced as an exhibit. While Williams no longer contests the admission of the photo of, or the testimony about, the children's underwear, this photo

8

serves to corroborate Giugler's testimony. The jury could reasonably infer that since Giugler provided photographic evidence that Williams had retained his granddaughter's underwear, her testimony regarding it and the other items were credible. She testified that the cellphone and laptop were present in the home, and that the defendant, being the only other person in the home, presumably disposed of them. Matt gave some additional background on the laptop and cellphone. He testified that Williams was reluctant to let anyone use either item but if he did let anyone use the laptop, Williams would tell them not to look at the photos. The trial court believed that a jury could reasonably infer that the cellphone was destroyed, and the laptop was removed beyond the reach of investigators. And, since Williams zealously protected these items from all others, they could also reasonably infer that he was the one who did it.

Finally, courts must determine whether the probative value of the other crimes evidence is substantially outweighed by undue prejudice. It is important to remember that evidence is not prejudicial simply because it is harmful to a party's case. *Webb v. Commonwealth,* 387 S.W.3d 319, 326 (Ky. 2012). This Court has consistently held that evidence is prejudicial if it could lead the jury to base its decision on emotional grounds, *Clark v. Commonwealth,* 833 S.W.2d 793, 795 (Ky. 1991), or if there is a risk that the evidence would be used for an improper purpose. *Purcell v. Commonwealth,* 149 S.W.3d 382, 400 (Ky. 2004). Also, the probative value must not be substantially outweighed by the potential for prejudice. *Bell v. Commonwealth,* 875 S.W.2d 882, 890 (Ky. 1994).

9

Here, the testimony regarding the cellphone and the laptop were introduced to show that Williams, upon learning of the investigation, evinced a consciousness of guilt when he made those items unavailable for further investigation. This is a legitimate purpose. Any trial where the subject matter involves the sexual abuse of a minor is a difficult subject and laden with emotion. In the context of this case, the introduction of evidence regarding these two items is not unduly prejudicial, and even if there were any prejudicial effect, it does not *substantially* outweigh the probative value of their introduction. This Court finds no error when the trial court allowed this testimony under KRE 404(b).

**B. The trial court did not err by allowing the testimony of Nicole Wadley, Leslie Williams, Lee Ann Pilgrim, and Detective Corey Jessup.**

Williams argues that the trial court erred when it allowed Nicole Wadley, Leslie Williams, Lee Ann Pilgrim, and Detective Corey Jessup to testify. Williams contends that their testimony constituted an implicit form of bolstering. Wadley was the forensic interviewer at the Lotus Child Advocacy Center. Leslie Williams was the stepmother of E.L., and Lee Ann Pilgrim was Leslie's friend who first heard the full extent of the allegations. Detective Jessup took part in the investigation and presented the case to the grand jury.

Williams states in his brief that he preserved this issue by objecting to the testimony of Nicole Wadley while he concedes the testimony of the other three is unpreserved. Consequently, the issue of the latter three witnesses will be reviewed by this court using the palpable error standard under RCr 10.26.

10

*Early v. Commonwealth,* 470 S.W.3d 729, 737 (Ky. 2015). For an error to be palpable it must be "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky.2006). Error, if unpreserved, may be corrected on appeal if it would cause a manifest injustice. *Commonwealth v. Goss,* 428 S.W.3d 619, 626-627 (Ky. 2014). This is an error that if it remained uncorrected, there would be a likelihood of a different result, or call into question the defendant's right to due process. *Id.* at 627.

There is a longstanding prohibition of witnesses vouching for the credibility or honesty of other witnesses. *Bell v. Commonwealth,* 875 S.W.2d at 745. This includes opinion testimony that endorses the credibility of a witness. *King v. Commonwealth,* 472 S.W.3d 523, 531 (Ky. 2015).

In *King,* the detective in charge of the investigation explained to the jury that the practice in that jurisdiction was to present the case to a task force on child sexual and physical abuse. *Id.* at 530. This task force was composed of representatives from the local "Commonwealths' Attorney's office, the County Attorney's office, victim's advocates, social services, school guidance counselors, police officers." *Id.* The testimony by the detective was that the task force recommended the case be presented to the grand jury. This Court in *King* found that testimony served to vouch for the credibility of the victim, and the jury could have perceived the allegations to be "verified by a panel of respected experts." *Id.* Yet this Court has previously warned against interpreting the prohibition against bolstering as a bar precluding parties from introducing the

11

context of their case and the background of their witnesses. *Miller ex rel. Mont. Baking v. Marymount,* 125 S.W.3d 274, 283 (Ky. 2004).[5]

The Commonwealth's questioning of Nicole Wadley went over her background and her role as a forensic interviewer. She explained the purpose of a child advocacy center is to provide a safe, neutral place that offers services to help reduce trauma. She told the jury what her qualifications were as a forensic interviewer, her professional background, training, and experience in the field. Wadley described the referral process and she explained that not all children divulge abuse. She also told the jury how she conducts the interview process and how she follows the procedures as set by the National Children's Advocacy Center. Wadley testified that there were several people that observed her interview with E.L., including members of law enforcement. E.L. was not aware of the presence of observers at the time the interview took place. Unlike the *King* case, Wadley said nothing about the credibility of E.L., nor did she offer an opinion on how she thought the case should proceed. She never repeated anything that E.L. told her or related the substance of the allegations.

Leslie Williams was E.L.'s stepmother. During her testimony she talked about her relationship with E.L. and her ex-husband Matt Williams. She

---

[5] "It is a routine practice in trials for an attorney to ask his witness certain preliminary questions which may not be relevant to the issues being litigated, which may go beyond mere identification, and which are designed to show that the witness will be somewhat credible or not biased in favor of the side calling him. For example, the educational background or professional status or employment position of a non-expert witness may be asked, or the witness's lack of prior contact with the side who has called him may be brought out. These questions give the jury some knowledge of the individual and a more complete perspective in considering his testimony." *Id.*

testified about the day E.L. seemed upset and withdrawn. Leslie told the jury about bringing E.L. to speak with her friend LeeAnn Pilgrim. Pilgrim gave Leslie a number to report allegations of sexual abuse after she spoke with E.L. Leslie spoke again with E.L. and afterwards called the number Pilgrim gave her and spoke with a detective. Again, no comments were made about the credibility of E.L. or that Leslie believed the allegations. Leslie did not repeat the substance of the allegations made to her by E.L. nor did she offer an explicit opinion on how the case should proceed, as prohibited by this Court in *King.*

Williams's next unpreserved error he contests is the testimony of Pilgrim. Described as a family friend by Leslie Williams, Pilgrim had training as a forensic interviewer though she no longer worked as one. Pilgrim gave some additional background on the Lotus Center and the methodology they employ. She testified she spoke with E.L. and afterwards told Leslie to set up a forensic interview, schedule therapy for E.L., and report the allegations. Pilgrim did not offer any opinion of the credibility of E.L. nor did she explicitly endorse the validity of the allegations. She did not repeat the substance of the allegations from her conversation with E.L.

Williams also takes issue with the testimony of Detective Corey Jessup. Detective Jessup told the jury that he presented the case to the grand jury based on the totality of the circumstances. The detective made no comment about E.L.'s credibility nor did he repeat the substance of the allegations.

13

Here the Commonwealth merely presented its case and the background of its witnesses and its investigation. Appellant appears to argue that because Williams was eventually indicted by the grand jury, the implication is that these witnesses believed E.L. was telling the truth. If they did not believe her, Appellant infers, he would not have been charged with a crime. Presumably, if Williams had his way at trial and these witnesses were prevented from testifying, Williams would have argued that the case was not investigated at all.

Parties are allowed to provide background for the investigation of their case and for the testifying witnesses. None of the witnesses above repeated the substance of the allegations nor did they offer an opinion that E.L. was a credible witness and the allegations were believable to them. Piling inference upon inference would paralyze the presentation of the case of the Commonwealth, and indeed, any party. This Court cannot sanction *King* to be so misinterpreted as to prevent any of these witnesses from testifying to provide background for themselves and the investigation. After all, an inference could be made in every investigation that culminates in a jury trial, that other people, whether investigators or members of the grand jury, have found the allegations to be credible. This is the reason for the instruction courts give in every case regarding the presumption of innocence. For these reasons this Court finds no error, palpable or otherwise, when the trial court allowed these witnesses to testify.

### C. Jury question during deliberations

Williams's last argument is that the trial court erred when, during the deliberations, the court answered when the jury requested clarification regarding testimony. The jury submitted a written question to the court asking the court whether E.L. had said "fake" or "vague" when referring to the conversation with her stepmother, Leslie Williams. The trial court held a bench conference. The Commonwealth argued that the answer was "vague." Williams argued that the testimony should be played back for the jury. The trial court referred to its notes, brought the jury back with all parties present, and answered the question for the jury. Williams is not contending the judge answered the question incorrectly, but by answering the question, instead of playing back the testimony, the trial court committed error.

This Court has held that the trial court's decision on how much testimony to read or replay to the jury is within its discretion and will not be overturned absent a clear abuse of discretion. *Baze v. Commonwealth,* Ky., 965 S.W.2d 817, 825 (1997). Upon review of the record, the answer was "vague." By answering the question from its notes, the trial court acted within its discretion.

### III.   CONCLUSION

Based on the foregoing, the Graves Circuit Court did not abuse its discretion by admitting evidence under KRE 404(b) pertaining to the cellphone and laptop. Likewise, it committed no error when allowing the testimony of Jennifer Williams, LeeAnn Pilgrim, Nicole Wadley and Detective Jessup.

15

Finally, the trial court acted well within its discretion by answering the question put to it by the jury during deliberations. Finding no error, we affirm.

All sitting.  All concur.


COUNSEL FOR APPELLANT

Travis Bewley
Assistant Public Advocate

COUNSEL FOR APPELLEE

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General