Sean Christopher NOAKES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–SC–000568–MR.

Supreme Court of Kentucky.

Oct. 27, 2011.

V. Gene Lewter, Department of Public Advocacy, Thomas More Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Sean Noakes, was convicted by a Boone Circuit Court jury of murder, attempted murder, and being a first-degree persistent felony offender. He received two life sentences for these crimes. He now appeals as a matter of right. Ky. Const. § 110(2)(b).

## I. BACKGROUND

On July 9, 2008, Appellant visited his friends, Barbara Rogers and Sharon Gette, at Rogers' home.[1] Upon his arrival, Rogers invited Appellant into the house and returned to the kitchen, where she had been reading the newspaper. After smoking a cigarette with Gette, Appellant entered the kitchen to speak with Rogers. Meanwhile, Gette went to the bedroom to lie down.

Rogers was sitting at the kitchen table talking to Appellant when he suddenly, without warning, began stabbing her in the back and chest. Appellant then proceeded to the bedroom, where he repeatedly stabbed Gette. Rogers was able to call 911 while Appellant was attacking Gette.

Appellant then fled, but was apprehended soon after the incident. Rogers survived; however, Gette died as a result of her injuries.

At trial, Appellant did not contest the stabbings; instead, he asserted he was not criminally responsible for his actions because he was insane at the time of the incident. Consequently, the evidence at trial focused primarily on Appellant's mental health.[2]

After the evidence was presented, the trial court instructed the jury on murder, first-degree manslaughter, and attempted murder. All of the instructions included qualifications which would have allowed the jury to find Appellant guilty but mentally ill or not guilty by reason of insanity. As noted above, the jury found Appellant guilty of murder and attempted murder.[3]

## II. ANALYSIS

On appeal, Appellant raises four allegations of error: (1) that the trial court erred by denying his motion for a directed verdict on the murder charge; (2) that the trial court erred by improperly instructing the jury on the definition of insanity; (3) that the trial court erred by improperly instructing the jury as to extreme emotional disturbance; and (4) that the prosecutor engaged in misconduct throughout the trial. Finding no cause for reversal, we affirm Appellant's convictions.

### A. Directed Verdict

1. Rogers was 73 years old at the time of the incident. Gette, who was Rogers's daughter, was 52 years old and temporarily residing with her mother. Appellant lived in the same neighborhood as Rogers and visited several times per week.

2. A number of doctors and mental health professionals testified regarding Appellant's diagnosed illnesses and ability to control his behavior.

3. The jury also found Appellant guilty of being a first-degree persistent felony offender. However, all of the issues raised in this appeal relate to the other charges.

Appellant first argues that the trial court erred by denying his general motion for a directed verdict. Specifically, Appellant asserts that the Commonwealth failed to present sufficient evidence to allow the jury to find him guilty of murder. He contends that the trial court should have directed a verdict on the question of *guilt* and instructed the jury solely on the question of whether he was *guilty but mentally ill* or *not guilty by reason of insanity.* Appellant acknowledges that this alleged error was not properly preserved for appeal; therefore, it is subject to palpable error review under RCr 10.26.[4]

█ A motion for directed verdict is appropriate "when the defendant is entitled to a complete acquittal[,] i.e., when, looking at the evidence as a whole, it would be clearly unreasonable for a jury to find the defendant guilty, under any possible theory, of any of the crimes charged in the indictment or of any lesser included offenses." *Campbell v. Commonwealth,* 564 S.W.2d 528, 530–31 (Ky.1978). A motion for directed verdict is not the proper means for relief "[w]hen the evidence is insufficient to sustain the burden of proof on one or more, but less than all, of the issues presented by the case." *Kimbrough v. Commonwealth,* 550 S.W.2d 525, 529 (Ky.1977) (*citing Columbia Gas of Kentucky, Inc. v. Maynard,* 532 S.W.2d 3, 7 (Ky.1976)).

█ In the instant case, Appellant does not argue that he was entitled to a complete acquittal on the murder charge. Instead, he asserts that the evidence required the jury to find, at minimum, that he was mentally ill; therefore, the trial court should have granted him a limited directed verdict on the issue of intentional murder. However, such a limited directed verdict does not exist.

A directed verdict would have been warranted if the Commonwealth failed to present sufficient evidence to allow a reasonable jury to convict Appellant of any crime related to the homicide. Review of the record discloses there was clearly sufficient evidence for the jury to convict Appellant under several different theories of the crime. Appellant himself admits that the evidence could have reasonably supported a verdict of guilty but mentally ill. Because Appellant was not entitled to a complete acquittal on the murder charge, the trial court did not err by denying his motion for a directed verdict.

## B.  Insanity Instruction

█ Appellant next argues that the trial court's instruction regarding the insanity defense was erroneous. The disputed portion of the instruction provides:

A person is "insane" if as a result of mental illness, mental retardation, or other mental condition, he lacks the substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. *Mental illness or retardation does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.*

---

4.  RCr 10.26 provides:

A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

"To discover manifest injustice, a reviewing court must plumb the depths of the proceeding ... to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky.2006). Manifest injustice exists if there is a substantial possibility that the result would have been different absent the error. *Id.* at 4.

(Emphasis added). Appellant contends that the language limiting insanity to abnormalities other than repeated criminal or antisocial conduct should not have been included in the instruction because it was not supported by the evidence. Appellant properly preserved this issue for appellate review by objecting to the instruction. *See* RCr 9.54(2).[5]

It is the duty of the trial court to instruct the jury on the law of the case. RCr 9.54(1). The court's instructions must be consistent with the evidence presented at trial. *Butler v. Commonwealth*, 560 S.W.2d 814, 816 (Ky.1978); *Pilon v. Commonwealth*, 544 S.W.2d 228, 231 (Ky.1976). Jury instructions in criminal cases should conform to the language of the applicable statute and, generally, it is left to the lawyers to flesh out the bare bones in closing argument. *Parks v. Commonwealth*, 192 S.W.3d 318, 326 (Ky.2006). We review a trial court's rulings regarding jury instructions for an abuse of discretion. *Ratliff v. Commonwealth*, 194 S.W.3d 258, 274 (Ky.2006).

The insanity defense is set forth in KRS 504.020, which provides in pertinent part:

> (1) A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental illness or retardation, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.
>
> (2) As used in this chapter, the term "mental illness or retardation" does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

The language used in the trial court's instruction is nearly identical to the language of KRS 504.020. Appellant essentially argues that the language of KRS 504.020(2) should not be included in an insanity instruction if there is substantial evidence that the defendant suffers from a mental illness other than repeated criminal or antisocial conduct. We disagree.

The language in subsection (2) is an essential part of the insanity defense. Subsection (1) sets forth the requirements that must be met for the defense to apply. Subsection (2) defines the term "mental illness," as used in subsection (1), by limiting the types of abnormalities which are sufficient to sustain the defense. Because the language in subsection (2) defines a term used in subsection (1), it is necessarily implicated any time a defendant raises the insanity defense, regardless of the evidence presented at trial. Therefore, the trial court did not abuse its discretion by including the language of KRS 504.020(2) in its insanity instruction.

**C. Extreme Emotional Disturbance Instruction**

Appellant next claims that the trial court erroneously instructed the jury on extreme emotional disturbance (EED). He acknowledges that this alleged error was not preserved; therefore, he requests palpable error review under RCr 10.26.

After the evidence was presented, Appellant's counsel requested that the trial court instruct the jury on first-degree manslaughter based on EED. Counsel asserted that the jury could conclude that Appellant was acting under EED because

---

5. RCr 9.54(2) provides:
No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

he had been kicked out of his house prior to the incident. Appellant's counsel tendered an instruction on first-degree manslaughter and the trial court ultimately gave the jury Appellant's tendered instruction which provides in pertinent part:

> [Y]ou will find the Defendant guilty of First Degree Manslaughter under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> . . . .
>
> A. That . . . he killed Sharon Gette by stabbing her;
>
> AND
>
> B. He was acting under the influence of extreme emotional disturbance.

According to Appellant, this instruction incorrectly required him to prove the existence of EED beyond a reasonable doubt. As such, Appellant contends that the jury instruction constitutes palpable error.

■■■ Appellant is correct in his assertion that a defendant is not required to prove the existence of EED beyond a reasonable doubt.[6] However, a defendant cannot seek reversal of his conviction on the basis of an improper jury instruction where the instruction given was the instruction he requested. *Mason v. Commonwealth*, 565 S.W.2d 140, 140 (Ky.1978). In *Mason*, the defendant tendered proposed insanity instructions, which were identical to the instructions ultimately given by the trial court. *Id.* The defendant was convicted and, on appeal to this Court, he asserted that the trial court's insanity instructions were erroneous and warranted reversal. *Id.* We affirmed the defendant's conviction holding that he was precluded from complaining of the content of the instruction because it was identical to the

instruction he requested. *Id.; see also Commonwealth v. Southwood*, 623 S.W.2d 897, 897 (Ky.1981) (following *Mason* ).

In this case, the trial court gave the first-degree manslaughter instruction Appellant tendered. As a result, he is barred from arguing it as a basis on this appeal to reverse his conviction.

### D. Prosecutorial Misconduct

Finally, Appellant alleges several instances of prosecutorial misconduct. Appellant claims that the Commonwealth engaged in a pattern of misconduct by: (1) eliciting testimony regarding Appellant's prior crimes and bad character; (2) soliciting opinion testimony as to whether Appellant could function outside of prison; (3) introducing evidence regarding antisocial personality disorder; (4) misstating the law regarding the insanity defense during closing argument; and (5) addressing penalty issues during guilt phase closing argument. Appellant concedes that these issues were not properly preserved for appeal; therefore, he requests palpable error review under RCr 10.26.

■■■ Prosecutorial misconduct is "[a] prosecutor's improper or illegal act . . . involving an attempt to . . . persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Black's Law Dictionary* (9th ed. 2009). Prosecutorial misconduct may result from a variety of acts, including improper questioning and improper closing argument. *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky.2010). "Any consideration on appeal of alleged prosecutorial misconduct must center on the overall fairness of the entire trial." *Partin v. Commonwealth*, 918 S.W.2d 219, 224 (Ky.1996), *overruled*

---

6. *See Greene v. Commonwealth*, 197 S.W.3d 76, 81 (Ky.2006) ("[W]here proof is presented that would support the finding of EED . . . the burden switches to the Commonwealth to disprove it beyond a reasonable doubt.").

*on other grounds by Chestnut v. Commonwealth,* 250 S.W.3d 288 (Ky.2008).

Appellant's first three allegations of prosecutorial misconduct relate to the testimony elicited from the Kentucky Correctional Psychiatric Center (KCPC) psychiatrist who evaluated Appellant. Appellant asserts that the Commonwealth, through the testimony of the KCPC psychiatrist, presented inadmissible evidence of his prior convictions, charges, and bad acts—including Appellant's threat to stab his step-father. Appellant also contends that the Commonwealth improperly sought the KCPC psychiatrist's opinion regarding his inability to function outside of prison, thus manufacturing a motive for him to commit the stabbings. Finally, Appellant argues that the Commonwealth, through the testimony of the KCPC psychiatrist, improperly introduced evidence of the characteristics of antisocial personality disorder in order to attribute the same bad characteristics to Appellant.

■■■ We previously acknowledged that "[t]here has developed a recent tendency in criminal appeals to characterize unpreserved issues as 'prosecutorial misconduct' for the purpose of raising them on appeal." *Davis v. Commonwealth,* 967 S.W.2d 574, 579 (Ky.1998). Despite a defendant's characterization, "[i]ssues involving the admission of evidence or testimony, when ruled upon by the trial court, do not constitute prosecutorial misconduct." *Stopher v. Commonwealth,* 57 S.W.3d 787, 806 (Ky.2001). "[U]npreserved claims of error cannot be resuscitated by labeling them cumulatively as 'prosecutorial misconduct.'" *Young v. Commonwealth,* 50 S.W.3d 148, 172 (Ky.2001).

In the instant case, the Appellant's first three allegations of prosecutorial misconduct are nothing more than alleged evidentiary errors. Based upon our prior precedent, these allegations do not constitute prosecutorial misconduct. Therefore, we decline to review them as such.

■■■ Appellant's remaining allegations of prosecutorial misconduct involve allegedly improper statements in the Commonwealth's closing argument. Appellant first contends that the Commonwealth misstated the law by arguing that Appellant was not legally insane because his diagnosis of antisocial personality disorder is excluded from the definition of insanity. Second, Appellant asserts that the Commonwealth improperly addressed penalty issues during the guilt phase by arguing that a verdict of not guilty by reason of insanity would give Appellant "an opportunity to be back on the streets someday."

■■■ "Counsel has wide latitude during closing arguments." *Padgett v. Commonwealth,* 312 S.W.3d 336, 350 (Ky. 2010) (citing *Brewer v. Commonwealth,* 206 S.W.3d 343, 350 (Ky.2006)). "A prosecutor may comment on tactics, may comment on evidence, and may comment on the falsity of a defense position." *Wheeler v. Commonwealth,* 121 S.W.3d 173, 189 (Ky.2003) (quoting *Slaughter v. Commonwealth,* 744 S.W.2d 407, 411–12 (Ky.1987)).

With regard to Appellant's first allegation of improper closing argument, we find no prosecutorial misconduct. In its closing, the Commonwealth noted that Appellant's diagnosis of antisocial personality disorder, which is characterized by repeated criminal conduct, is exempted from the definition of insanity. As noted above, KRS 504.020(2) provides that insanity "does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." We find that the prosecutor's argument legitimately applied KRS 504.020(2) to the evidence presented at trial. Thus, we find no error.

■ With regard to Appellant's second allegation of improper closing argument, we also find no prosecutorial misconduct. In its closing, the Commonwealth urged the jury to reject the insanity defense because it would give Appellant the opportunity to "be back on the streets someday." Appellant contends that this comment improperly addressed penalty issues during the guilt phase of the trial. We disagree. Pursuant to RCr 9.55 [7], the trial court instructed the jury regarding the consequences of an insanity verdict, specifically noting the circumstances under which the Appellant would be committed to or released from a mental health facility. Given the fact that the trial court's jury instructions specifically addressed Appellant's possible release from treatment, we do not believe the prosecutor's comment was improper. Accordingly, we find no error and affirm Appellant's convictions and their corresponding sentences.

All sitting. All concur.

7. RCr 9.55 provides:
On request of either party in a trial by jury of the issue of absence of criminal responsibility for criminal conduct, the court shall instruct the jury at the guilt/innocence phase as to the dispositional provisions applicable to the defendant if the jury returns a verdict of not criminally responsible by reason of mental illness or retardation, or guilty but mentally ill.