# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: JUNE 13, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0200-MR

HENRY STANLEY ABRAMS                           APPELLANT

|  | ON APPEAL FROM KENTON CIRCUIT COURT |
|---|---|
| V. | HONORABLE KATHLEEN LAPE, JUDGE |
|  | NO. 22-CR-00671 |

COMMONWEALTH OF KENTUCKY                    APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Kenton Circuit Court jury found Henry Stanley Abrams guilty of being a felon in possession of a handgun and a persistent felony offender (PFO) in the first degree. The jury recommended a sentence of twenty years in prison which the trial court imposed. Abrams appeals as a matter of right.[1] Abrams argues the following: the trial court's errors and the Commonwealth's misconduct during the sentencing phase requires reversal; the trial court erred by striking a juror; and Abrams was unduly prejudiced by impermissible hearsay testimony. Upon review we find no reversable error and thus affirm the judgment of the Kenton Circuit Court.

---

[1] Ky. Const. § 110(2)(b).

# I.  FACTS AND PROCEDURAL HISTORY

Damien Dolan testified at trial that on May 13, 2022, he was waiting with his girlfriend and brother near his mother's apartment in Covington, Kentucky. They were waiting for his mother and had planned to go out to dinner. As they were waiting Abrams pulled up in a black Ford truck and asked if they knew where to find some marijuana. Dolan and his brother responded that they did not know and told Abrams to move on. Abrams replied, "I wasn't talking you two, I was talking to the girl." Again, he asked her if she knew where to find marijuana. Dolan's girlfriend replied that she did not know where to buy marijuana and told Abrams to leave. Dolan's brother interjected, "Hey man, f**k you!" Abrams then answered, "F**k me? All right." Abrams then reached down and grabbed what Dolan thought was a handgun and racked it and said, "F**k me?" Dolan called 911 and told the operator the license plate number from the truck Abrams was driving as he pulled away. Dolan gave a description of Abrams to the 911 operator, describing him as an older white man in a dark shirt, driving a black ford pickup truck with a dog inside.

Covington police officer Jacob McBee was dispatched to find the vehicle. After searching for approximately an hour he located the vehicle and conducted a traffic stop. As he approached the vehicle Officer McBee smelled the odor of alcohol and testified Abrams appeared disoriented, slurred his speech and had glassy blood-shot eyes. Abrams appeared to have defecated on himself as well. Officer McBee asked Abrams to exit the vehicle and waited for backup to

2

conduct a DUI investigation. McBee asked Abrams if there was gun in the truck to which Abrams replied that he did not know because the truck was his wife's. Instead of waiting for the arrival of another officer, McBee decided to handcuff Abrams and place him in the back seat of his cruiser because Abrams was yelling and being combative.

Officer James Donaldson arrived on the scene and approached the truck. As he peered into the vehicle, he located a gun underneath the center console/armrest. Officer Donaldson waited for Monica Abrams, appellant's wife, to come retrieve the dog from the vehicle. Officer Alex Vancini collected the weapon and placed it into evidence. Vancini also testified he found an unspent round on the floorboard and another loose round in the glove box.

Monica Abrams testified that the handgun was hers and she had bought it for protection. Monica testified that she kept the gun with her in the truck when she was by herself but never had it when Abrams was in the vehicle with her. She further testified that she stored the gun at home in a safe but did not tell her husband about it and she was not sure if she told Abrams about her purchase of the gun at all. She testified that she took a nap that day because she was recovering from a medical treatment and was feeling tired. Abrams apparently took her vehicle while she was sleeping, and she testified she probably left the gun in her car after grocery shopping earlier that morning.

After the jury convicted Abrams of possession of a handgun by a convicted felon, Officer Munson from the Department of Probation and Parole testified during the penalty phase. Through Officer Munson's testimony the

3

Commonwealth introduced evidence of Abrams' three prior felony convictions he received in Kentucky. Then Monica took the stand to testify about her husband's medical problems. She testified that he had post-traumatic-stress-disorder, anxiety, and dementia. She testified that he required the use of a cane but was denied its use while he was in the jail and was experiencing pain as a result. She added that she made a mistake leaving the gun in the car that day. Monica expressed skepticism that Abrams had indeed racked the handgun and chambered a round, because it was found in the same position that she usually stored the handgun in the vehicle.

At this point, the Commonwealth began its cross-examination by asking her, "You don't want to believe that your husband did this because you don't want your husband to go to prison, right?" To which she replied, "My husband makes mistakes." Next, the Commonwealth began a series of questions about his prior felony convictions he received in Kentucky, insinuating that his multiple health issues had not prevented him from committing numerous felonies. The Commonwealth then asked if Abrams had been to jail in any other state, to which Monica answered Ohio. When he inquired further as to why Abrams was incarcerated in Ohio, defense counsel raised an objection based on hearsay. The Commonwealth retorted that her statements qualified for admission under the statements against interest exception to the hearsay rule. The trial court's ruling is inaudible but as the Commonwealth was allowed to finish its questioning, one can only surmise the trial court overruled the defense's objection. The Commonwealth finished this line of questioning by

4

eliciting that Abrams went to prison in Ohio for armed robbery and by asking whether he told her how many banks he had robbed.

The jury came back with a recommendation for a twenty-year sentence, which the trial court imposed. This appeal followed, so we now address the merits of the appeal.

## II.    ANALYSIS

Abrams argues first that the cumulative effect of the errors and the Commonwealth's purported prosecutorial misconduct mandate reversal on the penalty phase.[2] Secondly, he claims that the trial court erred by striking a juror for cause when she could have been fair and impartial. Lastly, Abrams avers that the trial court erred by allowing hearsay testimony through Damian Dolan.

### A. Commonwealth's questioning of witness was not prosecutorial misconduct.

First, we must address Abrams' characterization of the Commonwealth's cross-examination of Monica during the sentencing phase as prosecutorial misconduct. "Prosecutorial misconduct is '[a] prosecutor's improper or illegal act ... involving an attempt to ... persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Noakes v. Commonwealth,* 354 S.W.3d 116, 121 (Ky. 2011) (citing *Black's Law Dictionary* (9th ed. 2009)). This Court has held improper questioning or comments during closing can

---

[2] Abrams' posture here is perplexing to say the least. He alleges "cumulative impact of the errors and the Commonwealth's misconduct" as the basis for relief, yet only focuses on the Commonwealth's purported misconduct during Monica Abrams cross-examination. The other "errors" are not specified, though the admission of this evidence through his wife was timely objected to based on hearsay. While this alleged error, at least, is preserved at the trial court, it seems as if Abrams has abandoned it on appeal.

constitute prosecutorial misconduct. *Duncan v. Commonwealth,* 322 S.W.3d 81, 87 (Ky. 2010) (citing *Brown v. Commonwealth,* 313 S.W.3d 577 (Ky. 2010)). However, this Court has also held that:

> There has developed a recent tendency in criminal appeals to characterize unpreserved issues as 'prosecutorial misconduct' for the purpose of raising them on appeal.' *Davis v. Commonwealth,* 967 S.W.2d 574, 579 (Ky. 1998). Despite a defendant's characterization, '[i]ssues involving the admission of evidence or testimony, when ruled upon by the trial court, do not constitute prosecutorial misconduct.' *Stopher v. Commonwealth,* 57 S.W.3d 787, 806 (Ky. 2001). "[U]npreserved claims of error cannot be resuscitated by labeling them cumulatively as 'prosecutorial misconduct.' *Young v. Commonwealth,* 50 S.W.3d 148, 172 (Ky. 2001).

*Noakes* at 122. When defense counsel objected, on the basis of hearsay, to the line of questioning regarding out-of-state criminal convictions, the trial court allowed it to continue after the Commonwealth insisted it fell within the scope of permissible hearsay exceptions. On appeal, the appellant has abandoned the argument that the trial court's ruling on the hearsay question was wrong, in favor of an argument for prosecutorial misconduct. As to Abrams insistence that such questioning constitutes a "prosecutor's improper or illegal act ... involving an attempt to ... persuade the jury to wrongly convict a defendant or assess an unjustified punishment[,]" it is worth noting that this questioning took place in the sentencing phase of the trial. *Id.* at 121. And during sentencing the Commonwealth may introduce the following evidence:

1. Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor;

2. The nature of prior offenses for which he was convicted;

3. The date of the commission, date of sentencing, and date of release from confinement or supervision from all prior offenses;

4. The maximum expiration of sentence as determined by the division of probation and parole for all such current and prior offenses;

5. The defendant's status if on probation, parole, postincarceration supervision, conditional discharge, or any other form of legal release[.]

KRS[3] 532.055(2)(a). In short, the Commonwealth is permitted to introduce evidence of prior criminal convictions and the nature of prior convictions whether they were committed in Kentucky or not. Now, this Court has never granted the Commonwealth *carte blanche* in the manner in which it seeks to introduce evidence of prior convictions. *See Robinson v. Commonwealth,* 926 S.W.2d 853, 855 (Ky. 1996); *Cuzick v. Commonwealth,* 276 S.W.3d 260, 263 (Ky. 2009). But Abrams did not make that argument at trial, nor does he make it now on appeal. And as noted above, "[i]ssues involving the admission of evidence or testimony, when ruled upon by the trial court, do not constitute prosecutorial misconduct." *Stopher* at 806. Abrams objected to this line of inquiry, and the trial court ruled on the basis that objection. As such, this Court will not countenance any legal alchemy that seeks to transmute what is essentially an argument over the proper boundaries of Kentucky's truth in sentencing law, into a claim of prosecutorial misconduct. Therefore, we find Abrams' argument that the Commonwealth committed prosecutorial misconduct without merit.

---

[3] Kentucky Revised Statutes.

**B. The trial court did not abuse its discretion when it excused Juror S.[4]**

Abrams argues that the trial court erred by striking a juror for cause upon the Commonwealth's motion. This issue is preserved. The Kentucky Rules of Criminal Procedure provide that "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." RCr 9.36(1). A trial court's decision on whether to strike a juror for cause lies within the sound discretion of the trial court. *Ordway v. Commonwealth,* 391 S.W.3d 762, 781 (Ky. 2013). Upon review, an appellate court will not reverse the trial court's decision unless it is an abuse of discretion or clearly erroneous. *Id.* The trial court's decision on whether to strike a juror should be made "on the totality of the circumstances, not on a response to any one question." *Fugett v. Commonwealth,* 250 S.W.3d 604, 613 (Ky. 2008).

During voir dire, in response to the trial court's question whether anyone, or their relatives, or close friends have ever been accused of a crime, Juror S. came forward and informed the court that she had been arrested four years ago in Kenton County for public intoxication. The trial court then asked whether she felt like she was treated fairly and she responded in the negative. When the trial court asked Juror S. if she could be fair and impartial if she served as a juror she answered, "Possibly." The trial court asked her to elaborate, and she said, "I'm not exactly sure how I can explain that." Defense counsel pointed out that Juror S.'s experience took place in Erlanger while the

---

[4] Juror S. is a pseudonym both parties employ in their briefs.

police in this case were from Covington. Then he asked her if she could listen to their testimony and give it, "As much credence as you will any other witnesses . . . ." She said she could and a short while later, defense counsel went on to ask, "Okay, so even with what's happened to you, the unfortunate traumatic experience, you could still listen to officers and still hold their testimony?" Juror S. responded: "I mean I know there's good cops and bad cops. I clearly had a bad cop that night. I think it was his first arrest, actually. Yeah." Counsel went on, "And that's something you could determine based upon the questions during the trial and what you think about the officer and whether you believe what they're saying, correct? To which the juror said, "Correct." The trial court granted the Commonwealth's motion to strike for cause.

Abrams argues the trial court committed reversable error by striking Juror S. He cites three cases in his argument to buttress his claim. Only one of the cases he cites supports his argument that a juror struck for cause, who did not sit on the jury, should be grounds for reversal. *Gray v. Mississippi* was a capital case where the United States Supreme Court reaffirmed the necessity of the *Whitherspoon* doctrine when a defendant faces the death penalty. 481 U.S. 648, 668 (1987). The United States Supreme Court summarized the logic underpinning the *Whitherspoon* line of cases as:

> This Court held that a capital defendant's right, under the Sixth and Fourteenth Amendments, to an impartial jury prohibited the exclusion of venire members "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S., at 522, 88 S.Ct., at 1776. It reasoned that the exclusion of venire members must be

9

> limited to those who were "irrevocably committed ... to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings," and to those whose views would prevent them from making an impartial decision on the question of guilt. *Id.* at 522.

*Gray* at 657–58. *Gray* is, of course, readily distinguishable from the case at bar, as Abrams was not tried on a capital charge. Since Abrams has cited no relevant authority, this Court is not disposed to rule in his favor. But, even if Abrams had cited legal authority to mandate reversal in this specific instance, this Court would not hold that the trial court abused its discretion by striking for cause Juror S.

This Court has recently reiterated that when there is a reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict then she must be excused. *Moulder v. Commonwealth,* 681 S.W.3d 49, 52 (Ky. 2023). Once Juror S. replied that she could only "possibly" be fair and impartial, the trial court had a sound basis to strike her for cause. As for defense counsel's attempt to rehabilitate her, this Court, in *Moulder,* once more rejected that approach:

> We have several times declared that rehabilitation of a juror who has given a reasonable ground to doubt their impartiality is not merely inappropriate, but impossible. Rehabilitation is "[o]ne of the myths arising from the folklore surrounding jury selection ...." *Gabbard v. Commonwealth,* 297 S.W.3d 844, 853 (Ky. 2009) (quoting *Montgomery v. Commonwealth,* 819 S.W.2d 713, 717-18 (Ky. 1991)). Once the reasonable ground has been established to doubt impartiality, the juror cannot be "asked whether he can put aside his personal knowledge, his views, or those sentiments and opinions he has already, and decide the case instead based solely on the evidence presented in court and the court's instructions." *Id.* (quoting *Montgomery,* 819 S.W.2d at 718).

10

*Id.* at 55. As such, the decision of the trial court to strike Juror S. was well within the discretion of its authority.

## C. Dolan's hearsay testimony about his Brother's statement is not palpable error.

Finally, Abrams argues the trial court erred by allowing Dolan to testify that his brother saw Abrams holding the gun during the encounter. At trial, after the prosecutor asked, "Could you see the gun that he racked a round on?" Dolan answered, "I could not from the position I was standing in. But my brother said that he seen it. And I just know the motion and heard the gun." Abrams concedes this issue is unpreserved and thus requests palpable error review under RCr[5] 10.26.[6]

For an error to be palpable it must be "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky. 2006) (quoting *Burns v. Level,* 957 S.W.2d 218, 222 (Ky. 1997)). An unpreserved error may be corrected on appeal if failure to do so would cause a manifest injustice. *Commonwealth v. Goss,* 428 S.W.3d 619, 626-27 (Ky. 2014). This is an error that if it remained uncorrected, there would be a likelihood of a different result, or it would call into question the defendant's right to due process. *Id.* at 627.

The Kentucky Rules of Evidence define hearsay as, "A statement, other than one made by the declarant while testifying at the trial or hearing, offered

---

[5] Kentucky Rules of Criminal Procedure.

[6] "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

in evidence to prove the truth of the matter asserted." KRE[7] 801(c). This Court concedes that this statement from Dolan's brother is hearsay and if properly objected to should have been excluded from evidence. This Court need not delve into the minutiae of any possible exceptions of the hearsay rule that this statement may fall under. Nor will we quibble whether this error is "easily perceptible, plain, obvious and readily noticeable." *Brewer,* 206 S.W.3d at 349. For even if this Court should concede that Abrams is correct on both, we cannot hold that this error rises to the level of an error that had it not occurred would have led to a different result. Nor does it implicate Abrams' fundamental right to due process.

Abrams argues Dolan's brother hearsay statement that he saw Abrams holding the gun is the *only* evidence the Commonwealth had to show that Abrams *knowingly* possessed the handgun. This is not true, for Dolan also testified that although he did not see it, he heard Abrams 'rack' it and that he, "Knows the motion." Abrams was also found by the police in the same truck, with the same license plate, with a gun right beside him. And although Abrams certainly is free to believe the exculpatory testimony of his wife, the jury was not required to do so. Thus, the jury, even without the hearsay statement from Dolan's brother, would have had more than sufficient evidence with which to convict Abrams. Therefore, this Court will not hold this error rises to the level of palpable error.

---

[7] Kentucky Rules of Evidence.

12

## III. CONCLUSION

Based on the foregoing, we find the trial court committed no error, palpable or otherwise. We now affirm the judgment of the Kenton Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General