RENDERED:  MARCH 14, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0655-MR

JAY PETERSON                                                    APPELLANT

                    APPEAL FROM MUHLENBERG CIRCUIT COURT
v.                    HONORABLE BRIAN WIGGINS, JUDGE
                          ACTION NO. 22-CR-00110

COMMONWEALTH OF KENTUCKY                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, L. JONES, AND KAREM, JUDGES.

JONES, L., JUDGE:  Jay Peterson (Peterson) brings this appeal from a May 31, 2023 Judgment and Sentence and a June 20, 2023 Restitution Order entered in the Muhlenberg Circuit Court adjudicating Peterson guilty of theft by failure to make required disposition of property, $10,000 or more, sentencing him to five years'

imprisonment and court costs, and ordering him to pay restitution of $10,000 within six months of his release from incarceration. We affirm.

The charge against Peterson stemmed from a $10,000 check that he accepted as a deposit for a roofing job for Phillip and Sheila Burden (Burdens). The Burdens had contacted Peterson in early March of 2022 to replace the roof on their home in Central City, Kentucky, which had been damaged by hail in 2020. Peterson supplied an estimate of $21,626.24 for replacing the roof. The parties' agreement was memorialized in writing on March 4, 2022, and the Burdens gave Peterson a $10,000 check as a deposit for purchase of materials. Peterson deposited the check the following day.

As there was significant damage to the Burdens' roof, Peterson assured the Burdens that he would make their roof repair a priority. Mr. Burden believed Peterson was going to start the roofing job the following week. This did not occur. Over the next three months, Mr. Burden and Peterson exchanged several texts regarding a start date for the roof repair. Peterson eventually told Mr. Burden that his schedule was fully booked, and that he would be unable to start the job until 2023. Mr. Burden eventually asked Peterson to refund his $10,000 deposit. Peterson responded that the deposit was non-refundable. Peterson never performed the work on the roof, nor did he return the Burdens' deposit.

On June 7, 2022, Peterson was indicted upon theft by failure to make required disposition of property, $10,000 or more. Following a jury trial in April of 2023, Peterson was found guilty of the indicted offense and sentenced to five years' imprisonment. Subsequent to the trial, there was a hearing to determine the amount of restitution. Peterson was given notice and was present at the restitution hearing with counsel. At the hearing, Peterson disputed the amount of restitution, but at no time did he suggest an inability to pay. A restitution order was entered on June 20, 2023, setting restitution in the amount of $10,000 to be paid within six months of Peterson's release from incarceration. This appeal follows.

First, Peterson contends the circuit court erred by denying his motion for directed verdict of acquittal as the Commonwealth failed to present sufficient evidence that Peterson did not make the required disposition of the Burdens' $10,000 per Kentucky Revised Statutes (KRS) 514.070. Peterson more particularly asserts he utilized the $10,000 to purchase materials for the repair of the Burdens' roof. For the following reasons, we believe the circuit court properly denied Peterson's motion for a directed verdict of acquittal upon the offense of theft by failure to make required disposition of property, $10,000 or more.

The standard of review upon the denial of a motion for directed verdict of acquittal was articulated by the Supreme Court in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991):

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Id.* at 187; Kentucky Rules of Civil Procedure (CR) 50.01. Upon appellate review, the test for a directed verdict of acquittal is whether if "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187; *see also Eversole v. Commonwealth*, 600 S.W.3d 209, 217-18 (Ky. 2020). We must also be mindful that weight and credibility of evidence are matters within the sole province of the jury. *Reynolds v. Commonwealth*, 113 S.W.3d 647, 650 (Ky. App. 2003). Where statutory interpretation is necessary, our review of a question of law is *de novo. Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky. 2000).

The offense of theft by failure to make required disposition of property, $10,000 or more, is codified in KRS 514.070, and provides, in relevant part:

(1) A person is guilty of theft by failure to make required disposition of property received when:

-4-

(a) He or she obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his or her own property to be reserved in equivalent amount; and

(b) He or she intentionally deals with the property as his or her own and fails to make the required payment or disposition.

KRS 514.070(1).

In the case *sub judice,* there was sufficient evidence presented pursuant to KRS 514.070(1) that Peterson committed theft by failure to make required disposition of property, $10,000 or more. More particularly, there was sufficient evidence presented that Peterson obtained property (a check for $10,000 from the Burdens), upon an agreement to a known legal obligation to make a specified disposition (to purchase materials for the Burdens' roof), and that Peterson dealt with the property as his own (by depositing the Burdens' $10,000 check into a checking account over which Peterson had control); and Peterson failed to make the required disposition (by failing to provide materials for the repair of the Burdens' roof or return of their deposit). *See* KRS 514.070(1).

Drawing all fair and reasonable inferences from the evidence in favor of the Commonwealth, there was certainly sufficient evidence to induce a reasonable juror to believe beyond a reasonable doubt that Peterson was guilty of theft by failure to make required disposition of property, $10,000 or more.

-5-

Therefore, we conclude the circuit court properly denied Peterson's motion for directed verdict.

Next, Peterson contends the trial court erred by not permitting him to introduce additional receipts showing the purchase of roofing materials. The receipts at issue were produced the morning of trial. Peterson specifically asserts the receipts he produced the day of trial "might" have been for the purchase of the Burdens' roofing materials and should not have been precluded from introduction. However, the trial court ruled that Peterson was prohibited from introducing the additional receipts produced the morning of trial as they had not been disclosed before the discovery deadline.

Kentucky Rules of Criminal Procedure (RCr) 7.24 governs discovery and inspection of evidence and specifically provides, in relevant part:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may direct such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as may be just under the circumstances.

RCr 7.24(11). The sanction imposed by the trial court for violation of RCr 7.24(11) is clearly within the trial court's discretion.

In the case *sub judice*, the Commonwealth had a difficult time getting reciprocal discovery from Peterson. Peterson filed a motion to dismiss the indictment and attached various receipts that he had not previously produced. Thereafter, the Commonwealth filed a motion to compel production of documents by Peterson. The trial court granted the motion to compel and then set a discovery deadline of April 14, 2023. Peterson timely produced some bank records, invoices, and receipts for cash purchases he made at a local lumber company for roofing materials. Peterson was not precluded from admitting this material at trial. Peterson acknowledged the documents he produced did not contain identifying information linking the receipts to a specific roofing job. As Peterson had purchased roofing materials for several other roofs around the relevant time, it was impossible to determine from the documents Peterson produced if he had utilized the Burdens' $10,000 to purchase materials for their roof. And, as testified to by Peterson, he operated his business largely in cash and there was no documentation that definitively connected specific receipts to specific roofing jobs. This is true of both the receipts Peterson produced during discovery and those produced the morning of trial. Furthermore, Peterson acknowledged in his Appellant's Brief that the receipts produced the morning of trial only "might" have been for the Burdens' roofing materials. Peterson's Brief at 25. Thus, the receipts produced the morning of trial merely constituted cumulative evidence and the trial court did

not abuse its discretion by excluding the untimely submitted receipts as Peterson failed to comply with the discovery order. *See* RCr 7.24(11).

For his third argument, Peterson contends the Commonwealth committed prosecutorial misconduct during closing argument by stating that Peterson had not produced receipts to support his claim that he utilized the Burdens' $10,000 to purchase roofing materials for the replacement of their roof. Peterson objected during the Commonwealth's closing argument and claimed the Commonwealth should not have made the reference as Peterson was precluded from introducing receipts he produced the morning of trial.

It is well settled that prosecutorial misconduct is generally defined as "[a] prosecutor's improper or illegal act . . . involving an attempt to . . . persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Noakes v. Commonwealth*, 354 S.W.3d 116, 121 (Ky. 2011) (quoting BLACK'S LAW DICTIONARY (9th ed. 2009)). And, "[p]rosecutorial misconduct may result from a variety of acts, including . . . improper closing argument." *Noakes*, 354 S.W.3d at 121 (citing *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010)). However, it is equally well established "that counsel is granted wide latitude during closing argument." *Murphy v. Commonwealth*, 509 S.W.3d 34, 50 (Ky. 2017) (citations omitted). Any appellate review "of alleged prosecutorial

misconduct must center on the overall fairness of the entire trial." *Noakes*, 354 S.W.3d at 121-22 (citations omitted).

On the morning of trial, Peterson produced additional receipts that he claimed "might" have been for the Burdens' roofing materials and sought to introduce these receipts at trial. While the trial court did not prohibit Peterson from introducing into evidence similarly vague receipts produced during discovery, the trial court prohibited Peterson from introducing the additional receipts into evidence as they had not been previously disclosed before the discovery deadline. When the Commonwealth mentioned in closing that there were no receipts to show Peterson used the Burdens' $10,000 to purchase materials for their roof, Peterson objected. The Commonwealth responded that the reference in closing argument to Peterson's failure to produce receipts was not a reference to the excluded receipts but was intended to show the insufficiency of the receipts Peterson did produce at trial. The Commonwealth asserted these receipts did not support Peterson's claim that he used the Burdens' $10,000 to purchase materials for their roof. And, as Peterson admitted, the receipts produced the morning of trial were no more specific than those previously produced and, at best, only "might" demonstrate that he purchased the Burdens' roofing materials with their $10,000 deposit.

We do not believe the Commonwealth engaged in prosecutorial misconduct during closing argument by referencing the lack of receipts connecting the Burdens' $10,000 deposit to materials purchased for their roof. As counsel is granted wide latitude in closing argument and considering the overall fairness of the trial, we reject Peterson's contention that the Commonwealth engaged in prosecutorial misconduct by arguing that Peterson failed to produce receipts which connected the $10,000 deposit from the Burdens to any purchase of materials for the Burdens' roof.

In his fourth argument, Peterson asserts the trial court erred by ordering him to pay restitution of $10,000 within six months of his release from incarceration. Peterson particularly contends the trial court was required to make findings of fact regarding his financial situation or ability to pay before ordering restitution. Peterson acknowledges he failed to preserve the restitution issue for appellate review; however, Peterson asserts that he is a "poor person" under Kentucky law and claims the imposition of restitution against him by the trial court constitutes an illegal sentence that is jurisdictional and does not require proper preservation. Peterson further argues that it is "manifest injustice" for the trial court to impose restitution upon him without first having a hearing to determine "his financial situation, his ability to pay restitution, and what, if any, monthly payments he could afford." Peterson's Brief at 31.

Our Kentucky Supreme Court explained, "the phrase 'sentencing is jurisdictional' is not a reference to the trial court's jurisdiction or the lack thereof. Rather, it is a reference to the appellate court's inherent jurisdiction to correct an illegal sentence." *Jones v. Commonwealth*, 382 S.W.3d 22, 27 (Ky. 2011). "[T]he imposition of an unauthorized sentence is an error correctable by appeal, by writ, or by motion pursuant to RCr 11.42 or CR 60.02." *Id.* The Court further expounded that an illegal sentence is one made "contrary to statute" or "without fully considering what sentencing options were allowed by statute[.]" *Id.* The *Jones* Court concluded: "[w]e therefore regard the phrase, 'sentencing is jurisdictional,' simply as a manifestation of the non-controversial precept that an appellate court is not bound to affirm an illegal sentence just because the issue of the illegality was not presented to the trial court." *Id.* While RCr 10.26 provides palpable error as the standard for review of alleged errors insufficiently raised or preserved for review, the *Jones* Court held that "the palpable error standard of review under RCr 10.26 is not applicable to appellate review of a true 'sentencing issue.'" *Id.* at 27-28.

Conveniently for our purposes, *sub judice*, *Jones* also involved an incarcerated defendant's attempt to have the imposition of restitution against him declared an illegal sentence. *Id.* In *Jones*, the defendant was sentenced to 20 years of imprisonment, $288,000 in restitution, jail fees, and court costs. *Id.* at 26.

Without having preserved the issue for appeal, the defendant claimed the restitution imposed against him was an unlawful sentence because the amount of restitution imposed violated the $100,000 limit established by the Kentucky legislature in KRS 533.030, and because he was not given prior notice of the claim and was denied a meaningful opportunity to be heard. *Id*. at 28.

The imposition of restitution is not discretionary. "Restitution to a named victim, if there is a named victim, *shall be ordered* in a manner consistent, insofar as possible, with the provisions of this section and KRS 439.563, 532.033, 533.020, and 533.030 . . . . *The provisions of this section shall not be subject to suspension or nonimposition*." KRS 532.032(1) (emphasis added). The defendant in *Jones* alleged the trial court had violated KRS 533.030, which our Supreme Court agreed "is a true 'sentencing issue'" to be analyzed. *Jones*, 382 S.W.3d at 32. Peterson points to no statutory violation by the trial court in imposing restitution upon him though he claims to be "poor" under Kentucky law.[1] "There is no doubt that restitution is a proper component of a judgment imposing a final sentence. It is mandatory under KRS 532.032, and is, therefore, not an illegal sentence *per se*." *Id*. at 28 (footnote omitted).

---

[1] The restitution hearing was held June 19, 2023. The trial court's order imposing restitution was entered June 20, 2023. Peterson did not submit an affidavit of indigency until July 13, 2023. Though represented by the Department of Public Advocacy during this appeal, there is not an order in the record showing the trial court ever found Peterson to be indigent or poor as defined by Kentucky law.

On the other hand, Peterson's complaints about the trial court's failure to inquire or make findings regarding his financial situation and ability to pay restitution are not complaints about an illegal sentence, but complaints about a "procedural deficiency" or "procedural error." *Id.* Though finding the defendant's complaints about the hearing imposing restitution upon him raised "serious concern," the *Jones* Court held:

> Without depreciating the seriousness of Appellant's claim that he was denied due process, we conclude that his argument does not present a "sentencing issue." And therefore is subject to review as unpreserved error under the palpable error standard of RCr 10.26. Under that rule, an unpreserved error may be reviewed on appeal only if the error is "palpable" and "affects the substantial rights of a party." Even then, however, relief is appropriate only "upon a determination that manifest injustice has resulted from the error." RCr 10.26; *Wiley v. Commonwealth*, 348 S.W.3d 570, 574 (Ky. 2010).

*Id.* at 29. Peterson himself seems to concede his claims are subject to the higher threshold of palpable error review by claiming manifest injustice exists alongside his arguments that the restitution order imposed upon him constituted an illegal sentence.

An error is said to be palpable if it is "easily perceptible, plain, obvious and readily noticeable." *Sigrist v. Commonwealth*, 660 S.W.3d 636, 641 (Ky. App. 2022) (citation omitted). Even then, reversal is warranted only "if a manifest injustice has resulted from the error, which requires a showing of the

-13-

probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Jones*, 382 S.W.3d at 29 (internal quotation marks and citations omitted). "Manifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding." *Id*. (internal quotation marks and citation omitted).

Citing dicta from *Compise v. Commonwealth*, 597 S.W.3d 175, 181 (Ky. App. 2020), Peterson claims it is well settled that findings of fact should be made regarding a defendant's financial situation, and what, if any, monetary payments he could afford. The trial court having failed to make any such findings in the case *sub judice* should constitute manifest injustice, Peterson argues.

In *Compise*, the defendant was granted pretrial diversion with a condition of that diversion agreement being the payment of restitution. *Id*. at 177. The defendant waived a restitution hearing though both the defendant and the Commonwealth submitted conflicting written proof of the appropriate amount of restitution owed. *Id*. The circuit court then determined the total amount of restitution owed, but failed to set forth any particular terms for its payment. *Id*. at 178. Compise failed to comply with the terms of diversion, including failure to make any payments on the restitution owed. *Id*. at 179. The circuit court revoked Compise's pretrial diversion and she was then sentenced and placed on probation. *Id*. Compise appealed the revocation of her diversion, but the issue of restitution

-14-

was not before the appellate court. *Id*. at 181. Nevertheless, a review of the restitution order was undertaken. While the *Compise* Court stated that "the manner in which restitution was ordered in this case gives us pause," the Court only found "clear error" with the restitution order itself because it did not state "who [restitution] is to be paid to, set the amount of restitution to be paid and the amount and frequency of each payment." *Id*. at 181-82 (citation omitted). The Peterson restitution order contains no such deficiencies.

Furthermore, we note a significant distinction between the situation in *Compise* and Peterson. Peterson was incarcerated at the time restitution was ordered and this appeal was undertaken. At the time restitution was ordered, it was unknown when he would be released. While Peterson filed an affidavit of indigency a month after the restitution hearing, there was testimony at trial and during the restitution hearing that his business was successful and was carrying on in his absence. It was also unknown what his financial situation would be six months after his release from prison. Once more, we turn to *Jones* for guidance.

In *Jones*, our Supreme Court "recognized a clear legislative intent that restitution be established efficiently and fairly as part of the sentencing process in a summary proceeding that serves judicial economy and the traditional notions of fair play and substantial justice." *Jones*, 382 S.W.3d at 31 (internal quotation marks and citations omitted). The *Jones* Court also observed that in a criminal

case the trial court "has the statutory authority to establish restitution and is in the best position to make the appropriate and well-informed decision in a fair and impartial manner." *Id.* In conclusion, the *Jones* Court held that, in the absence of an agreement on restitution between a defendant and the Commonwealth,

> [D]ue process requires an adversarial hearing that includes the following protections:
>
> • reasonable notice to the defendant in advance of the sentencing hearing of the amount of restitution claimed . . . ; and
>
> • a hearing before a disinterested and impartial judge that includes a reasonable opportunity for the defendant, with assistance of counsel, to examine the evidence or other information presented in support of an order of restitution; and
>
> • a reasonable opportunity for the defendant with assistance of counsel to present evidence or other information to rebut the claim of restitution and the amount thereof; and
>
> • the burden shall be upon the Commonwealth to establish the validity of the claim for restitution and the amount of restitution by a preponderance of the evidence, and findings with regard to the imposition of restitution must be supported by substantial evidence.
>
> Notwithstanding the foregoing recitation of the minimal due process requirements, we reiterate that the trial courts retain broad discretion to manage the proceedings as needed to implement the mandate of KRS 532.032 in a manner that protects constitutional due process and achieves substantial justice.

-16-

*Id.* at 32. Peterson was afforded each of these protections. The failure of the trial court to inquire into Peterson's financial situation is not manifest injustice. Because a defendant's indigency has no bearing on the imposition of restitution, it is relevant only when setting the amount of any partial payments, the frequency of payments, and any sanction for non-payment. These are matters that often cannot be determined while a defendant is still incarcerated on the underlying sentence.

Our Supreme Court in *Jones* entrusted the trial court to act with efficiency, noting "that not every disputed issue of restitution can be fairly or efficiently resolved in a summary proceeding like the traditional sentencing hearing." *Id.* at 31. Nothing precludes the trial court from conducting a subsequent hearing to determine Peterson's ability to pay upon his release from prison, and nothing precludes Peterson from seeking such a review. KRS 532.033(6) and (7) in fact require such a hearing before sanctions can be imposed for noncompliance: "If restitution is not being paid as ordered, [the trial court shall] hold a hearing to determine why the restitution is not being paid; [and] [i]f restitution is not being paid and no good reason exists therefor, institute sanctions against the defendant[.]" Because this is a matter clearly placed within the authority of the trial court by both the legislature and our Supreme Court, there has been no manifest injustice; there is no error, palpable or otherwise; and this matter is not properly before us for review.

Next, Peterson asserts the trial court erred by ordering him to pay court costs as he contends to be a poor person. Peterson acknowledges this issue was also not preserved for appellate review but argues once more that sentencing issues are jurisdictional, and, thus, are not waived by his failure to preserve the issue.

It is well established that wrongful imposition of court costs is a sentencing error and this Court has "jurisdiction to cure . . . sentencing issues. *Chadwell v. Commonwealth*, 627 S.W.3d 899, 900 (Ky. 2021) (citation omitted). Furthermore, an appellate court "is not bound to affirm an illegal sentence just because the issue of the illegality was not presented to the trial court." *Id.* at 901-02 (citation omitted).

KRS 23A.205 governs imposition of court costs against a defendant and provides, in relevant part, that "taxation of court costs against a defendant, upon conviction in a case, shall be mandatory and shall not be subject to . . . nonimposition in the terms of a plea bargain or otherwise, unless the court finds that the defendant is a poor person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future." KRS 23A.205(2). A "poor person" is defined in KRS 453.190 as a person that "is unable to pay the costs and fees of the proceeding in

which he is involved without depriving himself . . . of the necessities of life, including food, shelter, or clothing." KRS 453.190(2).

Peterson is not challenging the obligation of the trial court to assess court cost against a criminal defendant. Rather, Peterson asserts the trial court implicitly determined that he was a poor person and thus imposition of court cost against him was prohibited by application of KRS 23A.205(2). Peterson alternatively asserts that the trial court's imposition of court cost to be paid within six months of release from custody was violative of KRS 534.020(2)(6). We disagree.

In *Chadwell*, 627 S.W.3d at 901-02, the Kentucky Supreme Court addressed the very issue raised here by Peterson. The *Chadwell* Court pointed out that:

> [t]he assessment of court costs in a judgment fixing sentencing is illegal *only* if it orders a person adjudged to be "poor" to pay costs. Thus, while an appellate court may reverse court costs on appeal to rectify an illegal sentence, we will not go so far as to remand a facially-valid sentence to determine if there was in fact error. If a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal. This is because there is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined. It is only when the defendant's poverty status has been established, and court costs assessed contrary to that status, that we have a genuine "sentencing error" to correct on appeal.

*Chadwell*, 627 S.W.3d at 901-02 (quoting *Spicer v. Commonwealth*, 442 S.W.3d 26, 35 (Ky. 2014)). In this case, as in *Chadwell* and *Spicer*, the judgment that imposed court costs does not indicate an assessment of Peterson's financial status. The original Judgment and Sentencing Order was entered prior to Peterson ever raising the issue of indigency. Though there was a subsequent Amended Judgment and Sentencing Order, the amendment only pertained to jail credit, not Peterson's financial status. The trial court was not asked to determine whether Peterson was a "poor person" and thus exempt from the court's imposition of court costs. In the absence of such a determination, "we cannot say a judgment imposing court costs was an illegal sentence subject to correction on appeal despite its lack of preservation." *Id.* at 902 (internal quotation marks omitted). The record indicates that Peterson had representation by private counsel below. An affidavit of indigency was submitted to obtain appointed counsel for Peterson on appeal and he is represented by a public defender before this Court. However, the record does not indicate that the trial court ever adjudged Peterson a "poor person," explicitly or implicitly. The trial court's determination that Peterson was a "needy person" entitled to representation by a public defender is not equivalent to finding Peterson is a poor person exempt from paying court costs. Simply stated, Peterson is not deemed a poor person exempt from paying court costs merely because he was adjudged a needy person eligible for appointment of a public defender. As

Peterson did not raise the issue of his status as a poor person below, we cannot conclude that a sentencing error occurred. Therefore, we do not believe the trial court erred by imposing court costs upon Peterson.

Finally, Peterson argues that he is entitled to a new trial under the cumulative error rule. The cumulative error doctrine provides that "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). However, "[w]e have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* In the case *sub judice*, we have found no single error and certainly no cumulative error. Thus, we believe any claim of cumulative error requiring a new trial is without merit.

We view any remaining contentions of error as moot or without merit.

Therefore, for the foregoing reasons, we affirm the May 21, 2023 Judgment and Sentence and the June 20, 2023 Restitution Order entered by the Muhlenberg Circuit Court adjudicating Peterson guilty of theft by failure to make required disposition of property, $10,000 or more, sentencing him to five years' imprisonment, assessing court costs and imposing restitution of $10,000 to be paid within six months of his release from incarceration.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky